588 S.E.2d 112

**AUTO–OWNERS INSURANCE COMPANY and Owners Insurance Company, Plaintiffs,**

v.

**CARL BRAZELL BUILDERS, INC., Essex Homes Southeast, Inc., Rex Thompson Builders, Inc., Marc Homebuilders, Inc., Garryle Deas, Veronica Deas, Alma E. Owens, Toni C. Yarber, Ron Thomas, Candace R. Thomas, Henry O. Jacobs Builders, Inc., James Waldon, Lela Waldon, Reginald Perry, Jeanette Perry, Theodore Cole, Susan Irwin, Mike Irwin, Webb Thompson and Diane Thompson, Defendants.**

No. 25736.

Supreme Court of South Carolina.

Heard Sept. 23, 2003.

Decided Oct. 20, 2003.

Grenville Delorme Morgan, Jr., and Larry A. Foster, Jr., of McAngus, Goudelock & Courie, L.L.C., of Columbia, for plaintiffs.

Charnell Glenn Peake, of Peake, Fowler & Associates, P.A., of Columbia, for Defendant Carl Brazell Builders, Inc.; Robert C. Brown, of Brown and Brehmer, of Columbia, for

Defendants Essex Homes Southeast, Inc., Rex Thompson Builders, Inc., and Marc Homebuilders, Inc.; Robert J. Thomas, of Rogers, Townsend & Thomas, P.C., of Columbia, for Defendant Henry O. Jacobs Builder, Inc.; and Robert D. Dodson, of Strom Law Firm, L.L.C., of Columbia, for Defendants Garryle Deas, Veronica Deas, Alma E. Owens, Toni C. Yarber, Ron Thomas, Candace R. Thomas, James Waldon, Lela Waldon, Reginald Perry, Jeanette Perry, Theodore Cole, Susan Irwin, Mike Irwin, Webb Thompson, and Diane Thompson.

## CERTIFIED QUESTIONS

Justice BURNETT:

This matter is before the Court for the purpose of answering certified questions propounded by the United States District Court for the District of South Carolina.

## *FACTS*

Plaintiffs Auto–Owners Insurance Company and Owners Insurance Company (Plaintiffs or Insurers) filed this action in federal court seeking a declaratory judgment against the above-captioned defendants. Specifically, Insurers sought a determination whether their commercial general liability (CGL) policies provide coverage for claims brought by co-defendants Garryle Deas, Veronica Deas, Alma E. Owens, Toni C. Yarber, Ron Thomas, Candace R. Thomas, James Waldon, Lela Waldon, Reginald Perry, Jeanette Perry, Theodore Cole, Susan Irwin, Mike Irwin, Webb Thompson, and Diane Thompson (Claimants) against co-defendants Carl Brazell Builders, Inc., Essex Homes Southeast, Inc., Rex Thompson Builders, Inc., Marc Homebuilders, Inc., and Henry O. Jacob Builders, Inc. (Corporate Defendants or Contractors).

### Underlying Litigation[1]

Before 1990, American Newland Associates began developing the Summit Development, an upscale multi-use planned

---

1. The facts are taken from the Order of Certification which refers to an amended complaint. While the parties refer to language from the Claimants' underlying state court complaints, particularly Claimants'

residential subdivision, in Columbia, South Carolina. Ultimately, the developers subdivided the Summit and sold the sites to residential contractors, including Contractors, who then sold property to Claimants.

In August 2001, Claimants filed an amended complaint in state court against Contractors asserting claims for class certification, negligence, gross negligence, recklessness, willful/wanton conduct, negligent misrepresentation, fraudulent concealment, and violations of the South Carolina Unfair Trade Practices Act. They alleged the Summit construction site was once called "the Pontiac Precision Range" and was used by the United States Department of Defense (DOD) as a training site for aerial bombing during World War II. The DOD's assessment and evaluation of the Pontiac Precision Range disclosed the presence of potentially hazardous materials on the property. Claimants alleged that, in spite of the presence of potentially hazardous materials, the development continued and developers sold lots to residential contractors, including Contractors.

The following is specified in the Order of Certification:

All of the plaintiffs' allegations in the underlying Amended Complaint arise out of the theory that the contractors and homebuilders, including the corporate defendants, knew of the presence of hazardous materials at the Summit property and failed to disclose information prior to each claimant's purchase of their respective homes. All of the damages claimed in the underlying case are economic in nature and some of the damages arise out of the diminution in value of the plaintiffs' respective properties caused by the potential presence of the allegedly hazardous materials.

Insurers are defending Contractors in the underlying state court litigation under a reservation of rights. They assert in the current action that the CGL policies issued to Contractors preclude coverage for the claims in the underlying litigation.

The subject CGL policies provide, in part, as follows:

---

Second Amended Complaint, our consideration is limited to the facts as stated by the District Court.

### SECTION I—COVERAGES UNDER COVERAGE A— BODILY INJURY AND PROPERTY DAMAGE LIABILITY.

Paragraph 1, designated **Insuring Agreement,** as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" which takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

. . .

### 1. Exclusions.

This insurance does not apply to:

a. "bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to any insured;

(b) At or from any premises, site, or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by

or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, costs or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants mean any solid, liquid, gaseous, or thermal irritant or contaminate including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

## SECTION V—DEFINITIONS AS FOLLOWS:

. . .

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

12. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The Court accepted the following four certified questions from the United States District Court for the District of South Carolina:

I. Do the subject CGL policies obligate the plaintiffs to indemnify and defend the corporate defendants for the claims of the claimants which are economic in nature and based solely on the diminution in value of the claimants' respective properties?

II. Do the corporate defendants' actions or inactions as alleged by the claimants qualify as an "occurrence" under the terms and conditions of the subject liability policies?

III. Does the intentional act exclusion preclude coverage?

IV. Does the pollution exclusion preclude coverage?

## DISCUSSION

I. Do the subject CGL policies obligate the plaintiffs to indemnify and defend the corporate defendants for the claims of the claimants which are economic in nature and based solely on the diminution in value of the claimants' respective properties?

Insurance policies are subject to the general rules of contract construction. *B.L.G. Enterprises, Inc. v. First Financial Ins. Co.*, 334 S.C. 529, 514 S.E.2d 327 (1999). The Court must give policy language its plain, ordinary, and popular meaning. *Id.* When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *Id.* "Questions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the third-party's complaint." *Isle of Palms Pest Control Co. v.*

*Monticello Ins. Co.,* 319 S.C. 12, 16, 459 S.E.2d 318, 320 (Ct.App.1994), *aff'd* 321 S.C. 310, 468 S.E.2d 304 (1996).

■  As noted in the Order of Certification,

All of the plaintiffs' allegations in the underlying Amended Complaint arise out of the theory that the contractors and homebuilders, including the corporate defendants, knew of the presence of hazardous materials at the Summit property and failed to disclose that information prior to each claimant's purchase of their respective homes. All of the damages claimed in the underlying case are economic in nature and some of the damages arise out of the diminution in value of the plaintiffs' respective properties caused by the potential presence of the allegedly hazardous materials.

The CGL policies provide coverage for "property damage" caused by an "occurrence." § I(b)(1). "Property damage" is defined as either "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." § V(12). The first definition of property damage is applicable here.[2]

We find the amended complaint in the underlying action does not allege any physical injury which meets the definition of "property damage" provided in the CGL policies. According to the Order of Certification, Claimants do not allege any physical injury to their property, but solely economic damages, particularly the diminished value of their property, as a result of Contractors' knowing sale of homes located on property containing hazardous materials. Under the unambiguous language of the policies, there is no property damage and, therefore, no covered occurrence. *B.L.G. Enterprises, Inc., v. First Financial Ins. Co., supra.*

Our conclusion is consistent with decisions in other jurisdictions. Most courts hold the diminished value of tangible

---

**2.** Referring to the Claimants' Second Amended Complaint's assertion that Contractors' negligence caused "damage to the Claimants' property and interference with full use and enjoyment of their property," Contractors assert the "loss of use" definition of "property damage" applies. As recognized in Footnote 1, however, the Order of Certification only refers to the Amended Complaint which apparently does *not* contain a claim for "loss of use."

property does not constitute property damage within the meaning of CGL policies which define property damage as physical injury. *Hartford Accident and Indem. Co. v. Pacific Mutual Life Ins. Co.,* 861 F.2d 250 (10th Cir.1988) (recognizing that 1973 revision to standard CGL policies amending definition of property damage from "injury" to "physical injury" was intended to preclude coverage for intangible injuries such as diminution in value); *State Farm Fire and Cas. Co. v. Tillerson,* 334 Ill.App.3d 404, 268 Ill.Dec. 63, 777 N.E.2d 986 (2002) (diminution in value is intangible damage, not physical injury, therefore, CGL policy does not provide coverage where injured parties do not allege contractor's work tortiously injured their home); *L. Ray Packing Co. v. Commercial Union Ins. Co.,* 469 A.2d 832 (Me.1983) (where complaint alleged price-fixing scheme resulting in loss of profits, but no physical injury to merchandise, it failed to allege property damage within CGL policy); *Federated Mut. Ins. Co. v. Concrete Units,* 363 N.W.2d 751 (Minn.1985) (incorporation of defective concrete into grain elevator resulting in diminution in market value of the elevator does not constitute physical injury as required by property damage definition in CGL policy); *Wyoming Sawmills, Inc. v. Transp. Ins. Co.,* 282 Or. 401, 578 P.2d 1253 (1978) (use of term "physical" to define property damage negates possibility policy intended to include consequential or intangible damage such as depreciation in value); *see generally American Home Assurance Co. v. Libbey–Owens–Ford Co.,* 786 F.2d 22 (1st.Cir.1986);[3] *but see American States Ins. Co. v. Herman C. Kempker Constr. Co., Inc.,* 71 S.W.3d 232 (Mo.Ct.App.2002). Accordingly, we answer Question I negatively.

In light of our answer to Question I, we decline to address the remaining questions propounded by the United States District Court for the District of South Carolina.

**CERTIFIED QUESTIONS ANSWERED.**

TOAL, C.J., WALLER, PLEICONES, JJ., and Acting Justice G. THOMAS COOPER, JR., concur.

---

**3.** *See also Schulmeyer v. State Farm Fire and Cas. Co.,* 353 S.C. 491, 579 S.E.2d 132 (2003) (provision of automobile insurance policy providing for cost of repair or replacement of vehicle does not entitle insured to diminution in value of adequately repaired vehicle).