**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-1700**

---

AUTO-OWNERS INSURANCE COMPANY; OWNERS
INSURANCE COMPANY,

                              Plaintiffs - Appellees,

        versus

ESSEX HOMES SOUTHEAST, INCORPORATED; REX
THOMPSON BUILDERS, INCORPORATED; MARC
HOMEBUILDERS, INCORPORATED,

                              Defendants - Appellants,

        and

GARRYLE DEAS; VERONICA DEAS; ALMA E. OWENS;
TONI C. YARBER; RON THOMAS; CANDACE R. THOMAS;
HENRY O. JACOBS BUILDERS, INCORPORATED;
VANTAGE BUILDERS, INCORPORATED; JAMES WALDON;
LELA WALDON; REGINALD PERRY; JEANETTE PERRY;
THEODORE COLE; SUSAN IRWIN; MIKE IRWIN; WEBB
THOMPSON; DIANE THOMPSON; CARL BRAZELL
BUILDERS, INCORPORATED,

                              Defendants.

---

**No. 04-1945**

---

HARLEYSVILLE MUTUAL INSURANCE COMPANY,

                              Plaintiff - Appellee,

        versus

MUNGO HOMES INCORPORATED; MUNGO COMPANY
INCORPORATED,

                                    Defendants - Appellants,


        and

DAVID WARREN; RON THOMAS; CANDACE THOMAS; MARC
HOMEBUILDERS, INCORPORATED,

                                    Defendants.


                    _____

                    No. 04-1986
                    _____


BUILDERS MUTUAL INSURANCE COMPANY,

                            Plaintiff - Appellee,


        versus

MARC HOMEBUILDERS, INCORPORATED,

                            Defendant - Appellant,


        and

RON THOMAS; CANDACE R. THOMAS,

                                    Defendants.


                    _____


Appeals from the United States District Court for the District of
South Carolina, at Columbia.  Joseph F. Anderson, Jr., Chief
District Judge. (CA-02-2093-17-3; CA-03-2715-17-3; CA-02-3899-17-
3)

                    _____

Argued:  May 24, 2005              Decided:  June 29, 2005

                    _____

-2-

Before LUTTIG and DUNCAN, Circuit Judges, and Eugene E. SILER, Jr., Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:** Robert Charles Brown, BROWN & BREHMER, Columbia, South Carolina, for Appellants Essex Homes Southeast, Incorporated, Rex Thompson Builders, Incorporated, and Marc Homebuilders, Incorporated; Frederick Albert Gertz, GERTZ & MOORE, Columbia, South Carolina, for Appellants Mungo Homes, Incorporated, and Mungo Company, Incorporated. Grenville D. Morgan, Jr., MCANGUS, GOUDELOCK & COURIE, L.L.P., Columbia, South Carolina, for Appellees Auto-Owners Insurance Company and Owners Insurance Company; Stephen P. Groves, Sr., NEXSEN PRUETT, Charleston, South Carolina, for Appellee Builders Mutual Insurance Company; John Robert Murphy, MURPHY & GRANTLAND, P.A., Columbia, South Carolina, for Appellee Harleysville Mutual Insurance Company. **ON BRIEF:** J. Austin Hood, BROWN & BREHMER, Columbia, South Carolina, for Appellants Essex Homes Southeast, Incorporated, Rex Thompson Builders, Incorporated, and Marc Homebuilders, Incorporated. Larry A. Foster, Jr., MCANGUS, GOUDELOCK & COURIE, L.L.P., Columbia, South Carolina, for Appellees Auto-Owners Insurance Company and Owners Insurance Company; Adam J. Neil, MURPHY & GRANTLAND, P.A., Columbia, South Carolina, for Appellee Harleysville Mutual Insurance Company. Bradish J. Waring, NEXSEN PRUETT, Charleston, South Carolina, for Appellee Builders Mutual Insurance Company.

———————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Appellants in the three cases before us appeal from the district court's declaratory judgment that the appellees, who provide Commercial General Liability insurance to appellants, are not obligated to defend appellants against third-party litigation in state court.[1] We affirm the judgment of the district court, albeit for reasons different than those advanced by that court.

I.

Appellants are builders and developers of the Summit Development, "an upscale multi-use planned residential development in Columbia, South Carolina." J.A. 256.[2] Appellants are the defendants in state court litigation arising out of their involvement in the Summit Development. In that litigation, the plaintiffs, purchasers of Summit Development lots and homes (herein referenced as the third-party claimants), have alleged, inter alia, that appellants failed to disclose that the Summit Development had previously been used by the Department of Defense as a training site for aerial bombing and, as a result, contained Ordinance and Explosive Wastes (OEW). J.A. 256.

---

[1] Because these three appeals present insurance coverage disputes involving the application of identical insurance policy language to the same underlying state court litigation, we consolidated the cases for argument and dispose of them together in this opinion.

[2] Unless otherwise noted, citations to the joint appendix refer to the appendix submitted in the Auto-Owners case.

-4-

At the time appellees instigated the instant declaratory judgment action, the operative complaint in the state court proceedings alleged that appellants' tortious conduct resulted only in economic damages to their property.  See J.A. 12 ("As a result of the existence of OEW within the Summit Development the value of Plaintiffs' property . . . is substantially less than the value it was represented to be.").  The district court, before resolving any of the issues in the case, certified the following question to the South Carolina Supreme Court:

> Do the subject CGL policies obligate the plaintiffs to indemnify and defend the corporate defendants for the claims of the claimants which are economic in nature and based solely on the diminution in value of the claimants' respective properties?

Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc., 588 S.E.2d 112, 115 (S.C. 2003).  The South Carolina Supreme Court answered this question in the negative.  It noted that the subject CGL policies defined "property damage" as either "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." Id.  The court concluded that only the former definition (physical injury) was at issue here as the operative complaint did "not contain a claim for loss of use." Id.  The court then concluded that the complaint did not "allege any physical injury . . . but solely economic damages," which are not covered by the policies.  Id.

-5-

After this ruling, the third-party claimants amended their state court complaint to include an allegation that "[p]laintiffs . . . can not enjoy the full use of their property without first conducting geographical surveys to determine the extent of OEW contamination on their property and taking steps to remove such materials." J.A. 66. Plaintiff-appellees subsequently sought a declaration from the district court that they were not obligated to defend against the "loss of use" claims. The district court granted Plaintiff-appellees' summary judgment motion and the instant appeal followed.

## II.

The CGL policies at issue in this appeal provide, in relevant part, as follows:

> 1. a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

> **********

> b. This insurance applies to "bodily injury" and "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

> (2) The "bodily injury" or "property damage" occurs during the policy period.

> **********

"Occurrence" means an accident, including a continuous or repeated exposure to substantially the same general harmful conditions.

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

J.A. 17-30.

In this diversity case, we apply South Carolina law to the question of whether the foregoing policy terms require appellee-insurance companies to defend appellants against the claims of the third-party claimants.  Under South Carolina law, "[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the third party's complaint . . . .  If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend."  Isle of Palms Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d 318, 319 (S.C. Ct. App. 1995) (emphasis added).  Accordingly, consistent with the foregoing CGL policy terms, we must examine the third-party claimants' complaint to determine whether it alleges an occurrence that occurred during the policy period that caused the loss of use of the third-party claimants' property.

-7-

The district court held that the complaints in the underlying litigation did not allege an occurrence during the policy period that caused property damage as defined in the policy, i.e., loss of use. The district court reasoned that there were two possible occurrences, either the bombing or the appellants' "alleged negligent misrepresentation and negligent failure to inform the Claimants of the contamination." J.A. 258. According to the district court, neither of these occurrences triggered coverage; the bombing occurred before the policy period and appellants' negligence "did not 'cause' the property damage." J.A. 258.

The district court erred. Whether appellants' negligence caused the third-party claimants' loss of use is a question of fact that will ultimately be resolved in the underlying state court litigation. This factual determination has no bearing under South Carolina law on the question relevant to appellees' duty to defend, namely whether the third-party claimants have alleged an occurrence that caused their loss of use. Here, the underlying complaint alleges that appellants' negligence "caused Plaintiffs and members of Plaintiff Class to suffer . . . interference with the full use and enjoyment of their property." J.A. 67-68 (emphasis added); id. at 66 ("Plaintiffs . . . can not enjoy the full use of their property . . .") (emphasis added). While the district court may be correct that the third-party claimants' lawsuit is meritless as to the loss of use damages, such a conclusion does not relieve

appellees of their duty to defend appellants.  The duty to defend is triggered by frivolous and non-frivolous allegations alike.

Appellees nonetheless maintain that the underlying complaint does not trigger a duty to defend because appellants' alleged negligence does not satisfy the policies' definition of "occurrence."  But the South Carolina Supreme Court has held that negligence is an occurrence as that term is defined in the instant CGL policies.  See Boggs v. Aetna Casualty and Surety Co., 252 S.E.2d 565 (S.C. 1979) (holding that "Boggs' negligent decision to place the house on that particular portion of the lot was an 'occurrence' within the meaning of the policy," where occurrence was defined as it is in the instant policies); see also Isle of Palms, 459 S.E.2d at 319 (holding that a negligent termite inspection was an "occurrence" as that term is defined in a CGL policy).

Although the district court erred when it determined that the complaint did not allege an occurrence that caused loss of use, it nonetheless reached the correct result.  Appellees' duty to defend is relieved by the policy's exclusion "m," which provides:

> This insurance does not apply to "property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

The policy goes on to define "your work" as "work or operations

performed by you or on your behalf," including "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work,'" and "the providing or failure to provide warnings or instructions."

By its terms, exclusion "m" is applicable to the allegations in the underlying complaint. As noted above, any duty to defend can only be based on the third-party claimants' alleged loss of use; the South Carolina Supreme Court has already determined that appellees do not have a duty to defend against claims pertaining to physical property damage. See Auto-Owners, 588 S.E.2d at 115-16. Thus, the damaged property in this case is, as the exclusion requires, "property not physically injured." And, according to the allegations in the underlying complaint, all of the property damage was caused by defects, deficiencies, or inadequacies in appellants' work. As an initial matter, any representations or misrepresentations pertaining to the presence of OEW are covered because "your work" includes "representations" and the "failure to provide warnings." Additionally, appellants' decision to "design[] and construct[]" the Summit Development on a "former bombing site" is work performed by appellant.

Appellants nonetheless maintain that the exclusion does not apply to the allegations that appellants failed to conduct geographic and environmental surveys and failed to remove the OEW, see J.A. 67, because such failures do not fall within the

-10-

definition of "your work" because no "work [was] <u>performed</u>."  But appellants' "work" was the development of the site, including subdividing the lots and building the homes.  Appellants' alleged failures to investigate and remove the OEW constitute defects, deficiencies, or inadequacies in their development of the site, i.e., in the performance of their work.  Accordingly, there is no possibility that appellees will be obligated to cover losses suffered by appellants in the underlying litigation and appellees are therefore not obligated to defend appellants in that litigation.


<u>CONCLUSION</u>

For the reasons set forth above, the judgment of the district court is affirmed.


<u>AFFIRMED</u>