687 S.E.2d 58

**Andrew F. STRINGER, III, Respondent,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

**No. 4631.**

Court of Appeals of South Carolina.

Heard April 29, 2009.

Decided Nov. 10, 2009.

Withdrawn, Substituted, and Refiled Nov. 20, 2009.

Rehearing Denied Jan. 20, 2010.

Charles R. Norris, of Charleston, and John P. Riordan, of Greenville, for Appellant.

Donald Leverette Allen, of Anderson, for Respondent.

THOMAS, J.

We consider this case *en banc* to determine whether the language of an insurance policy provides coverage for an accident that occurred following receipt of a notice of cancellation, or whether coverage may be resurrected based on representations of a State Farm Mutual Automobile Insurance Co., employee to the insured after the accident. We answer both questions in the negative and reverse.

## *FACTUAL/PROCEDURAL BACKGROUND*

Andrew F. Stringer, III paid a premium of $424.76 to State Farm in exchange for a six-month automobile insurance policy that provided coverage from February 15, 2002, to August 15, 2002. The policy stated the premium was subject to increase "during the policy period based upon corrected, completed, or changed information." During the policy period, a policy

adjustment caused Stringer's premium to increase by $47.25.[1] State Farm sent a bill to Stringer for this increase in premium, which he failed to pay. On July 11, 2002, State Farm mailed a notice of cancellation to Stringer, informing him the policy would be cancelled on July 29, 2002, unless he paid $47.25 on or before that date.[2] The notice further stated that payment after July 29, 2002, would reinstate the policy, however, "[t]here [would be] no coverage between the date and time of cancellation and the date and time of reinstatement." Stringer took no action in response to this notice.

On July 31, 2002, Stringer was involved in an automobile accident with an uninsured driver. Subsequently, Stringer notified State Farm employee Sherri Jennings of the accident. Stringer testified Jennings informed him there would be uninterrupted coverage if he paid the $47.25 due.[3] On August 2, Stringer paid the additional premium, and Jennings issued a receipt and mailed a form FR–10 to the Department of Motor Vehicles verifying that Stringer had valid coverage on the date of the accident.

Ultimately, State Farm refused to pay Stringer's claim under the policy, contending the policy was not in effect when the accident occurred. Stringer commenced this action to determine whether coverage existed at the time of the accident. The trial court ruled Stringer was entitled to uninterrupted coverage because he fulfilled his obligations under the policy by paying the entire premium prior to the expiration of the six-month policy period. In addition, the trial court found Jennings's post-accident and post-cancellation representations of coverage precluded State Farm from denying coverage. State Farm appealed. In a split decision, a three-judge panel of this court affirmed the trial court's order. *See Stringer v. State Farm Mut. Auto. Ins. Co.*, Op. No. 4474 (S.C. Ct.App.

---

1. The trial court found the increase in premium was due to the addition of a driver to the policy at the request of Stringer. On appeal, State Farm takes exception to this finding and argues a traffic accident in October 2001 caused Stringer's premium to increase. The cause for the increase in premium is of no consequence to our analysis.

2. The policy allowed State Farm to cancel Stringer's policy for failure to pay the premium when due.

3. At trial, Jennings denied making this statement.

Filed Dec. 23, 2008) (Shearouse Adv. Sheet No. 48 at 68–78). We granted State Farm's petition for *en banc* review.

## *ISSUES*

Whether the trial court erred in finding Stringer was entitled to uninterrupted automobile insurance coverage after receiving a notice of cancellation from State Farm based on: (I) the language of the policy or (II) representations of coverage by a State Farm employee.

## *STANDARD OF REVIEW*

 The determination of coverage under an insurance policy is an action at law. *Nationwide Mut. Ins. Co. v. Prioleau*, 359 S.C. 238, 241, 597 S.E.2d 165, 167 (Ct.App.2004). On appeal, we are limited to determining whether the trial court based its ruling on an error of law or on a factual conclusion without evidentiary support. *S.C. Farm Bureau Mut. Ins. Co. v. S.E.C.U.R.E Underwriters Risk Retention Group*, 347 S.C. 333, 338, 554 S.E.2d 870, 873 (Ct.App.2001).

## *LAW/ANALYSIS*

### I. Policy Language

.State Farm contends the trial court erred in construing the terms of the policy liberally in favor of Stringer without finding the policy ambiguous. In addition, State Farm argues the trial court erred in finding the language of the policy provided for continuous and uninterrupted coverage on the date of Stringer's accident. We agree in part.

 Ambiguous terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer. *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). "However, in cases where there is no ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense." *Garrett v. Pilot Life Ins. Co.*, 241 S.C. 299, 304, 128 S.E.2d 171, 174 (1962).

■ In our view, the trial court neither found the policy ambiguous nor construed the policy in favor of Stringer. In its order, the trial court determined Stringer was covered under the policy because he "complied with the terms of the insurance contract, drafted by State Farm, in that he made all of his premium payments ... before the end of the current policy period." While the trial court referenced the proposition of law requiring courts to construe an ambiguous insurance policy in favor of the insured, it never made any specific findings of fact to support the conclusion the policy in question is ambiguous as a matter of law.[4] Because the trial court did not find the policy to be ambiguous, we review only the plain language of the insurance policy to determine whether any evidence supports the trial court's ruling that Stringer was entitled to uninterrupted coverage. *See USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008) ("Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary, and popular meaning." (quoting *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 185, 236 S.E.2d 818, 819 (1977))).

The trial court found Stringer entitled to uninterrupted coverage because he complied with the terms of the insurance policy by paying the additional premium prior to the end of the policy period on August 15, 2002. The trial court relied solely on the following policy provision in making this finding: "[t]he policy period is shown ... on the declarations page and is for successive periods of six months each for which you pay the renewal premium. *Payments must be made on or before the end of the current policy period.*" (Emphasis added by trial court). The trial court erred in isolating the statement "[p]ayments must be made on or before the end of the current policy period," from its proper context. *See Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 593, 225 S.E.2d 344, 349 (1976) ("[T]he meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract." (citing 13 Appleman Ins. Law and Practice, § 7382, p. 43–45 (1976))); *Torrington Co. v. Aetna Cas. & Sur. Co.*, 264 S.C. 636, 643,

---

4. We further hold that even if the trial court found the policy ambiguous, this was error.

216 S.E.2d 547, 550 (1975) ("[T]he parties have a right to make their own contract and it is not the function of this Court to rewrite it or torture the meaning of a policy to extend coverage never intended by the parties."). In proper context, this sentence clearly refers to renewal and provides that payments of renewal premiums must be made before the end of the current policy period. This sentence does not contemplate whether the insured's payment of an additional premium before the expiration of the current policy period provides for uninterrupted coverage. Accordingly, the trial court erred in failing to consider the context in which this provision appears.

In reviewing the language of the insurance policy as a whole, no evidence supports the trial court's conclusion that Stringer was entitled to uninterrupted coverage. The policy in question provides that the initial $424.76 premium was subject to increase "during the policy period based upon corrected, completed, or changed information." Further, pursuant to the policy, Stringer agreed to pay any additional premium that might become due during the policy period. In this case, changed information caused an additional premium of $47.25 to be due in order to keep the policy in effect until August 15, 2002. State Farm sent two notifications to Stringer, informing him that failure to pay the additional premium on or before July 29, 2002, would result in cancellation of the policy on that date. State Farm specifically retained the right to cancel the policy for failure to pay the premium when due as the policy states: "[State Farm] will not cancel your policy before the end of the current policy period unless ... you fail to pay the premium when due."

In this case, Stringer's failure to pay the increase in premium by July 29, 2002, effectively cancelled his coverage under the plain language of the policy on that date. Thus, when Stringer was involved in an automobile accident two days later, he was not covered under the policy. In addition, the cancellation notice specifically and unequivocally provided that "[t]here is no coverage between the date and time of cancellation and the date and time of reinstatement." Thus, Stringer's payment of $47.25 on August 2 failed to provide coverage from the date his policy was cancelled—July 29—to the date

his policy was reinstated—August 3.[5] While payment of the additional premium reinstated Stringer's coverage from August 3 to the end of the policy period, the payment of the additional premium could not resurrect the policy to provide coverage during the gap between July 29, 2002, and August 3, 2002. Accordingly, the trial court erred in finding payment of the additional premium during the policy period provided for uninterrupted coverage.[6]

## II. Employee Representation

Finally, State Farm argues the trial court erred in finding uninterrupted coverage based on post-accident and post-cancellation representations of coverage made by Jennings. We agree.

 Notwithstanding Stringer's failure to plead estoppel in this action at law, such a defense still fails on the merits. *See* Rule 8(c), SCRCP (stating that all affirmative defenses shall be pleaded); *see also Wright v. Craft*, 372 S.C. 1, 21, 640 S.E.2d 486, 497 (Ct.App.2006) (finding that estoppel must be "affirmatively pleaded as a defense and cannot be bootstrapped onto another claim"). In appropriate circumstances, estoppel can be used to prevent the insurer from denying coverage to the insured. *Koren v. Nat'l Home Life Assurance Co.*, 277 S.C. 404, 407, 288 S.E.2d 392, 394 (1982). In order to prevail on a claim of estoppel, the insured must demonstrate: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reasonable reliance on the other party's conduct; and (3) a prejudicial change in position.

---

5. Although payment was made on August 2, Stringer's policy was not reinstated until the following day.

6. We note *Jeffrey v. Sunshine Recycling*, Op. No. 4626 (S.C. Ct.App. filed October 28, 2009) (Shearouse Adv. Sh. No. 47), in which this court found no lapse in workers' compensation coverage occurred because a reinstatement notice failed to specifically identify any coverage lapse. In *Jeffrey*, according to section II.D.5 of the Assigned Risk Plan of the South Carolina Workers' Compensation Assigned Risk Plan Operating Rules and Procedures, any lapse in coverage should have been specifically identified. Thus, *Jeffrey* is distinguishable from this case as there is no such policy language, nor is this matter within the realm of workers' compensation law.

*Provident Life & Accident Ins. Co. v. Driver,* 317 S.C. 471, 477, 451 S.E.2d 924, 928 (Ct.App.1994).

■ Here, the trial court did not find uninterrupted coverage based on estoppel.[7] Rather, the trial court concluded Stringer was entitled to uninterrupted coverage because he reasonably relied on Jennings's representations of coverage. As the elements of estoppel make clear, reasonable reliance alone does not provide a basis upon which to prevent State Farm from denying coverage. Accordingly, the trial court erred in determining reasonable reliance sufficiently bound State Farm to coverage.

In addition, nothing in the record demonstrates Stringer satisfied the remaining elements of estoppel. Namely, Stringer has failed to prove that he suffered a prejudicial change in position or detrimentally relied on the representations of Jennings. *See Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.,* 368 S.C. 342, 359, 628 S.E.2d 902, 912 (Ct.App.2006) (indicating the lack of detrimental reliance is fatal to a claim of estoppel). Stringer has failed to do so because Jennings' representation of coverage occurred *after* the accident took place. While our appellate courts have prevented insurance companies from denying coverage, they have done so when the insurer, or its agent, makes representations of coverage *before* the loss occurred. *See Riddle–Duckworth, Inc. v. Sullivan,* 253 S.C. 411, 424, 171 S.E.2d 486, 492 (1969) (holding an insured was entitled to rely on representations that he was "fully covered"; accordingly, when an accident later occurred, the insurer could not deny coverage); *Giles v. Lanford & Gibson, Inc.,* 285 S.C. 285, 289, 328 S.E.2d 916, 918–19 (Ct.App.1985) (finding that when an insured specifically requested particular coverage and an employee, in writing the policy, represented the policy provided such coverage, the insurer could not deny coverage when the loss subsequently occurred). These cases are not analogous to the case *sub judice* because here, the representation of coverage occurred after the loss.

As we stated in dictum in *Jones v. State Farm Mutual Automobile Insurance Co.,* "[The Appellant] cites no legal

---

7. We also note that the record indicates Stringer stated that recovery was not being sought on an estoppel theory.

authority establishing that a policy, once effectively canceled, can somehow become renascent by virtue of a qualified representation of coverage by an agent after a loss." 364 S.C. 222, 236, 612 S.E.2d 719, 726 (Ct.App.2005). Similarly, we have failed to find any legal authority to support this proposition. Accordingly, the trial court erred in determining Stringer was entitled to uninterrupted coverage based on representations of coverage made by Jennings after the accident.

## CONCLUSION

Because neither the plain language of the policy nor the representations made to Stringer operate to provide uninterrupted coverage or to resurrect the policy, the ruling of the trial court is

**REVERSED.**[8]

HEARN, C.J., WILLIAMS, PIEPER, KONDUROS, and LOCKEMY, JJ., CURETON, A.J., concur.

HUFF and SHORT, JJ., dissent.

HUFF and SHORT, JJ. (dissenting):

We would affirm the judgment of the court below, and therefore, we respectfully dissent from the majority opinion. In doing so, we adopt the opinion of Judge Ralph King Anderson, Jr. that originally constituted the majority opinion of the panel that heard this case. *See Stringer v. State Farm Mut. Auto. Ins. Co.*, Op. No. 4474 (S.C. Ct.App. Filed Dec. 23, 2008) (Shearouse Adv. Sh. No. 48 at 68).

---

8. In light of our decision on the aforementioned issues, it is not necessary for this court to address State Farm's additional arguments on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that an appellate court need not address remaining issues when a decision on a prior issue is dispositive).