737 S.E.2d 631

**William and Mary Frances WALDE, as assignees of Johnson Construction Company of Aiken, Inc., Respondents,**

**v.**

**ASSOCIATION INSURANCE COMPANY, Appellant.**

Appellate Case No. 2010–172706.

No. 5061.

Court of Appeals of South Carolina.

Heard June 20, 2012.

Decided Dec. 12, 2012.

432

R. Michael Ethridge and Jennifer B. McCoy, of Carlock Copeland & Stair LLP, both of Charleston, for Appellant.

Benjamin E. Nicholson, V, of McNair Law Firm P.A., of Columbia, for Respondents.

THOMAS, J.

On cross-motions for summary judgment, Association Insurance Company (AIC) appeals the grant of partial summary judgment, costs, and attorney's fees to William and Mary Frances Walde, as assignees of Johnson Construction Company of Aiken, Inc. (Johnson). AIC argues the trial court erred in finding AIC had a duty to defend Johnson against the Waldes' arbitration claims. AIC further maintains the trial court erred in holding AIC was liable for costs and attorney's fees due to a breach of that duty because the court failed to find that AIC's refusal to defend was without reasonable cause. Because the provisions of Johnson's insurance policy with AIC are unambiguous, those provisions are the guideposts of our analysis below. We reverse.

**FACTS AND PROCEDURAL HISTORY**

The Waldes owned residential property in Aiken and planned to build a barn and paddock to accommodate their horses. A special exception from a city ordinance was required to allow the barn because the barn was not for commercial use. A variance from the ordinance was also needed to allow the barn to be built behind their home because the barn would be nearer to the neighbors' houses than permitted by the ordinance. To those ends, the Waldes contracted with Johnson for $500 to represent them before Aiken's Board of Zoning Appeals (the BZA) in obtaining the necessary approval to build the barn and paddock (the Permitting Contract).[1]

---

1. In the order appealed from, the trial court found Johnson and the Waldes entered two separate contracts: the Permitting Contract and a

Johnson submitted applications for the variance and special exception to the BZA. Before and immediately after Johnson met with the BZA, Johnson's owner, Mike Johnson, affirmed to the Waldes that the variance and special exception being applied for would be sufficient for the desired barn, including an upstairs accessory apartment, to comply with Aiken's ordinances. The BZA approved the variance and special exception, but those approvals were not sufficient to build the barn the Waldes desired.

The Waldes subsequently contracted with Johnson for the construction of a paddock and barn that included the upstairs apartment (the Construction Contract). Johnson had completed 80% of the barn by June 2008. That month, Aiken's building inspector notified Johnson the barn did not comply with the variance or special exception. The barn was not built in the location permitted by the special exception. Nor had the BZA approved the apartment, which caused the barn to contravene the height and size standards of Aiken's ordinances.

Johnson sought another variance and special exception with the BZA. The BZA denied the applications and directed the barn to be torn down. The Waldes consequently terminated the Construction Contract with Johnson. Without Johnson's help, they sought a variance and special exception for a third time, requesting that the barn remain if the apartment was removed. The BZA granted this request, and Johnson tore

contract to build a paddock and two-story barn—apartment. Thus, the trial court held Johnson's representation of the Waldes before the BZA was "separate and apart" from its construction of the barn itself. At the summary judgment hearing, AIC argued the parties entered only one contract that included permitting and construction. However, AIC's initial appellant's brief does not include an issue on appeal addressing this contention, does not argue the specific issue, and only briefly refers to this concern in its exclusion arguments without providing any supporting authority. Therefore, we do not address whether the trial court properly found the parties entered separate contracts. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal."); *Fassett v. Evans*, 364 S.C. 42, 50 n. 5, 610 S.E.2d 841, 846 n. 5 (Ct.App.2005) (holding that even if an argument could be construed as raising a separate issue on appeal, it was abandoned for being conclusory and failing to cite any supporting authority).

down the apartment to lower the barn's roof to remedy the problem.

In September 2008, the Waldes filed an arbitration demand with the American Arbitration Association. Johnson was insured by AIC under a comprehensive general liability policy (the Policy). Johnson notified AIC of the arbitration demand, and AIC denied any duty to defend or indemnify pursuant to the Policy. Johnson thereafter hired its own counsel to defend against the Waldes' allegations.

The Waldes also filed a brief with the arbitrator. Taken together,[2] the arbitration demand and arbitration brief specify claims for breach of contract, negligent misrepresentation, breach of fiduciary duty, and unjust enrichment. They include a quote from Mike Johnson at the second BZA meeting that he "had no inkling, no intent," and "no idea" that the construction plans violated the size or height requirements of the variance and special exception. The gravamen of the Waldes' negligence, negligent misrepresentation, and breach of fiduciary duty claims alleged the same conduct by Johnson: negligent representation of them pursuant to the Permitting Contract to obtain the necessary approval of the desired barn, which included performing work before the BZA and advising them that the variance and special exception would permit the barn's height with the apartment. The Waldes' arbitration claims sought prejudgment interest; arbitration costs and fees; damages for the difference between the value of the barn they contracted for and the value of the barn they received; damages for the cost of paying additional professionals to supervise, plan, and survey construction of the property due to Johnson's negligence; travel costs; and punitive damages.

---

2. The trial court considered both the arbitration demand and the Waldes' arbitration brief. The record does not indicate whether AIC objected to the consideration of the arbitration brief before the trial court ruled or in a subsequent Rule 59(e) motion. Thus, whether the trial court should have considered the arbitration brief is not properly before us, and we consider both the arbitration demand and the arbitration brief in deciding the issues. *See Doe v. Doe*, 370 S.C. 206, 212, 634 S.E.2d 51, 55 (Ct.App.2006) (when an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion, the issue is not preserved for appellate review).

Johnson and the Waldes settled their dispute prior to arbitration. Part of the settlement agreement assigned to the Waldes any rights Johnson had to insurance proceeds under the Policy.

The Waldes thereafter filed a complaint against AIC, alleging AIC breached its duty to defend and indemnify Johnson. The complaint also attached the Policy, the arbitration demand, and the arbitration brief.

█ The Waldes moved for partial summary judgment that (1) AIC breached its duty to defend Johnson and (2) AIC was therefore liable to them under section 38–59–40(1) of the South Carolina Code (2002) for their costs and attorney's fees in suing AIC as well as Johnson's costs and attorney's fees in the prior arbitration.[3] AIC filed a cross-motion for summary judgment in response. AIC maintained the Waldes' arbitration claims did not involve an "occurrence" giving rise to "property damage" and were precluded by "insured contract," "your work," "intentional acts," and "products-completed operations hazard" (PCOH) exclusions.[4] Even if AIC breached a duty to defend, moreover, AIC argued the Waldes were not entitled to costs or fees because they did not present any evidence AIC's refusal was without reasonable cause.

The trial court granted the Waldes' motion for partial summary judgment. It held AIC was obligated to defend Johnson in the arbitration because (1) the Waldes suffered "property damage" caused by an "occurrence" and (2) the alleged policy exclusions did not apply. The trial court lastly held that, because AIC failed to defend Johnson, AIC was liable for the fees and costs sought by the Waldes. This appeal followed.

---

3. The Waldes' motion did not seek a finding on the amount of costs or fees recoverable; it sought a finding on AIC's liability for those items.

4. We note the parties refer to exclusion A.2(j)(6) as the "Your Work exclusion" and exclusion A.2(l) as the "PCOH exclusion." While this practice may be helpful to the reader, we discuss the exclusions by referring to their particular subdivisions. We do this to emphasize that legal analysis addressing contractual provisions should focus on the language of the contract. In this case, the Policy frames the meaning of "occurrence," "property damage," "your work," and "PCOH" by using different, specific definitions. Those definitions only gain legal meaning through the insuring clause and exclusions of the Policy.

## ISSUES ON APPEAL

1. Did the trial court err in finding AIC had a duty to defend Johnson?

2. Did the trial court err in finding AIC liable for fees and costs under section 38–59–40?

## STANDARD OF REVIEW

"Summary judgment is appropriate where there is no genuine issue of material fact and it is clear the moving party is entitled to a judgment as a matter of law." *Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 379 S.C. 573, 576, 666 S.E.2d 897, 899 (2008). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Id.* at 577, 666 S.E.2d at 899.

## ANALYSIS

### I. Duty to Defend

AIC asserts the trial court erred in finding AIC had a duty to defend Johnson against the Waldes' claims for multiple reasons. We address them below.

 "Insurance policies are subject to the general rules of contract construction." *M & M Corp. of S.C. v. Auto–Owners Ins. Co.*, 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010). "The standard CGL policy grants the insured broad liability coverage for property damage and bodily injury which is then narrowed by a number of exclusions. Each exclusion in the policy must be read and applied independently of every other exclusion." *Auto Owners Ins. Co., Inc. v. Newman*, 385 S.C. 187, 197, 684 S.E.2d 541, 547 (2009). We "interpret insurance policy language in accordance with its plain, ordinary, and popular meaning, except with technical language or where the context requires another meaning. Policies are construed in favor of coverage, and exclusions in an insurance policy are construed against the insurer." *M & M Corp.*, 390 S.C. at 259, 701 S.E.2d at 35.

Here, the provisions of the Policy, and the manner in which they apply under the allegations at issue,[5] are unambiguous. Thus, those provisions are the guideposts of our analysis below.

"Questions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the third party's complaint." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.,* 319 S.C. 12, 15, 459 S.E.2d 318, 319 (Ct.App.1994), *aff'd* 321 S.C. 310, 468 S.E.2d 304 (1996). In examining these allegations, the "court must look beyond the labels describing the acts to the acts themselves which form the basis of the claim against the insurer." *Collins Holding Corp.,* 379 S.C. at 577, 666 S.E.2d at 899. If these alleged acts create "a possibility of coverage under an insurance policy, the insurer is obligated to defend." *Isle of Palms Pest Control Co.,* 319 S.C. at 15, 459 S.E.2d at 319.

A. *"Property Damage" Caused by an "Occurrence"*

The Policy's insuring clause provides the following:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

. . . .

b. This insurance applies to ... "property damage" only if:

(1) The ... "property damage" is caused by an "occurrence". . . .

---

5. The Waldes contend the trial court found as alternative holdings that exclusion A.2(j)(6) does not apply because it is "ambiguous as applied to these facts" and thus must be construed against AIC, the insurer. They contend AIC has not appealed these findings and they accordingly are the law of the case. However, AIC's entire appeal is clearly based upon an argument that the Policy unambiguously excludes coverage for the Waldes' claims. Therefore, the finding that this exclusion is "ambiguous as applied" is not the law of the case.

Thus, AIC argues it did not have a duty to defend Johnson because the Waldes' claims failed to raise the possibility of "property damage" caused by an "occurrence." [6]

### 1. *Property Damage*

█ AIC contends the trial court erred in finding the Waldes alleged "property damage" because their allegations do not establish "physical injury" or "loss of use." AIC argues the claims in fact allege economic loss resulting from faulty workmanship. We find the Waldes alleged "property damage" under the terms of the Policy.

The Policy defines "property damage" as the following:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

In granting partial summary judgment, the trial court found the Waldes raised the possibility of more than mere economic loss because they claimed both (1) "physical injury" when the barn was partially torn down and (2) if no physical injury, "loss of use" of the barn when the BZA determined it failed to comply with Aiken's regulations. We hold the Waldes alleged loss of use without physical injury.

---

6. In defense of this argument, the Waldes contend the trial court's finding that AIC had a duty to defend Johnson is the law of the case. They first maintain the trial court made an unappealed finding in a footnote that AIC had a duty to defend based upon Johnson's breach of a fiduciary duty. However, the footnote is attached to the court's finding that an "occurrence" existed by virtue of Johnson's negligent statements to the Waldes pursuant to the Permitting Contract that the plans complied with the variance and special exception. We do not interpret the footnote to constitute an alternative finding to support a blanket grant of summary judgment on the duty to defend, including any consideration of whether "property damage" was alleged or any exclusions apply. In the footnote, the trial court held the allegations underlying the breach of fiduciary duty claim established an "occurrence."

The Waldes' arbitration claims clearly allege economic loss that does not by itself trigger coverage under the Policy.[7] However, this does not preclude AIC from having a duty to defend Johnson against the Waldes' claims. The Policy's insuring clause says AIC has a "duty to defend [Johnson] against any 'suit' seeking those damages" Johnson "becomes legally obligated to pay ... because of ... 'property damage' to which this insurance applies." Thus, AIC must defend Johnson in a suit for damages so long as the Waldes' allegations raise the possibility that Johnson is obligated to pay those damages because of "property damage" caused by an "occurrence" that is not excluded by the Policy.

The seminal case in South Carolina addressing whether a party has alleged mere economic loss is *Auto–Owners Insurance Co. v. Carl Brazell Builders, Inc.*, 356 S.C. 156, 588 S.E.2d 112 (2003). In that case, third party homeowners sued multiple insureds on a number of theories for the failure to disclose the known presence of hazardous materials in the construction and sale of their homes. *Id.* at 159, 588 S.E.2d at 113. The homeowners alleged the insureds' failure to disclose the presence of the hazardous materials caused the homeowners to suffer lower property values and other economic damages. *Id.* The court held the insurer did not have a duty to defend the insureds because the homeowners' claims did not allege any "physical injury" that meets the definition of "property damage." *Id.* at 162–63, 588 S.E.2d at 115. The court reasoned the allegations of mere diminution in property value and other economic damages are purely economic loss. *Id.* at 163, 588 S.E.2d at 115.

Unlike the third parties in *Carl Brazell Builders, Inc.*, the Waldes have gone beyond alleging mere economic loss. They have raised the possibility of "property damage."

■ The Waldes' allegation that the barn had to be partially torn down to make it comply with Aiken's regulations does not raise the possibility of "physical injury to tangible proper-

---

7. The Waldes' arbitration allegations raise several items that are economic loss, including prejudgment interest; arbitration costs and fees; damages for the difference between the value of the barn contracted-for and received; damages for the costs of travel and construction supervision, planning, and surveying of their property.

ty." "Physical injury" is not defined by the Policy, but an "injury" is generally considered the violation of another's legal right. *See Black's Law Dictionary* 856 (9th ed.2009) (providing that an injury is "the violation of another's legal right, for which the law provides a remedy"). Under this definition, Johnson's partial tearing down of the barn's second story does not constitute an injury. This removal of the second story was a remedial measure Johnson performed to fix the injury he caused to the Waldes when the construction put them in violation of Aiken's ordinances.

Nonetheless, the Waldes' allegations do raise the possibility of "loss of use of tangible property" that has not been physically injured. The Waldes could not fully use the property after the BZA informed them of the barn's noncompliance. Thus, they have alleged property damage as defined under the Policy. Whether that claim of "property damage" is covered by the Policy is determined by whether it was caused by an "occurrence," and whether an exclusion applies.

We disagree with AIC's argument that the Waldes failed to allege "property damage" because the physical injury to the barn resulted from faulty or defective workmanship. Under the plain language of the Policy, whether "property damage" was caused by faulty workmanship is relevant in the Policy's exclusions and not the definition of "property damage." Further, the three cases raised by AIC in support of its argument are inapplicable to the property damage issue. *See Crossmann Cmties. of N.C., Inc. v. Harleysville Mut. Ins. Co.,* 395 S.C. 40, 46, 50, 717 S.E.2d 589, 592, 594 (2011) (stating that the question before the court was whether the party's claims involved an "occurrence"; the parties stipulated the claims involved property damage and the parties would not argue any policy exclusions); *L–J, Inc. v. Bituminous Fire & Marine Ins. Co.,* 366 S.C. 117, 122–25, 621 S.E.2d 33, 36–37 (2005) (addressing whether a party's claims involved an "occurrence"); *Century Indem. Co. v. Golden Hills Builders, Inc.,* 348 S.C. 559, 563–65, 561 S.E.2d 355, 357–58 (2003) (stating that the parties stipulated the claims involved property damage and addressing whether a claim for cost of repair was excluded by a faulty workmanship exclusion), *overruled on other grounds by Crossmann Cmties. of N.C., Inc.,* 395 S.C. at 50, 717 S.E.2d at 594.

## 2. *Occurrence* [8]

■ The Waldes have consistently maintained an "occurrence" existed under the Policy due to Johnson's negligent representation of them before the BZA pursuant to the Permitting Contract. The trial court agreed with this assertion, finding three occurrences arising out of the Permitting Contract: (1) Johnson's incorrect advice to the Waldes before and immediately after the BZA meeting that their desired barn would comply with the ordinances, variance, and special exception; (2) Johnson's failure to obtain the necessary approvals from the BZA to build the desired barn; and (3) Johnson's failure to design the barn within the height and location requirements established by the BZA and Aiken ordinances.

On appeal, AIC maintains the Waldes' claims do not arise from an "occurrence" because the Waldes' arbitration demand asserted Johnson's advice was "wrongful." According to AIC, this allegation indicates the Waldes' claims are not based upon an "accident" that would give rise to an "occurrence." We disagree.

■ In the Policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." When left undefined in a CGL policy, "accident," means "[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt." *Newman*, 385 S.C. at 192, 684 S.E.2d at 543 (alteration in opinion) (internal quotation marks omitted).

Here, the Waldes' allegations establish the possibility of an "occurrence." The Waldes' allegation that Johnson "wrongly" said their plans complied with the BZA's variance and exception could be construed as alleging Johnson was mistaken or acting "without due care." *See Black's Law Dictionary* 856 (9th ed.2009) (defining a "wrong" as a "breach of one's legal duty"); *id.* (defining "wrongful" as "1. Characterized by unfairness or injustice . . . 2. Contrary to law; unlawful"); *id.* (defining "wrongful conduct" as "[a]n act taken in violation of

---

8. Our supreme court has held the definition of "occurrence" is ambiguous in the progressive property damage context. *Crossmann Cmties. of N.C., Inc.*, 395 S.C. at 49, 717 S.E.2d at 594.

a legal duty; an act that unjustifiably infringes on another's rights"); *Webster's New World College Dictionary* 1653 (4th ed.2008) (defining "wrongly" as "in a wrong manner; ... incorrectly; amiss"). Thus, regardless of whether a claim is made for "negligence," "negligent misrepresentation," or "breach of fiduciary duty," the Waldes sufficiently allege Johnson's erroneous representation of them before the BZA and provision of information was unintentional. *Compare Collins Holding Corp.,* 379 S.C. at 577–78, 666 S.E.2d at 899–900 (holding the trial court erred in finding a negligent misrepresentation claim created the possibility of an occurrence because the allegations underlying the claim could not be construed as accidental since they incorporated assertions the insured's conduct "systematic[ally]," "intentional[ly]," and "deliberate[ly]" violated the law and therefore could not possibly be construed as negligent in nature). Therefore, it could be an accident within the terms of the Policy. That accident caused loss of use, and the Waldes have sufficiently alleged "property damage" caused by an "occurrence."

B. *Exclusion A.2(j)(6)*

 If the Waldes sufficiently alleged "property damage" caused by an "occurrence," AIC argues the trial court erred in finding AIC had a duty to defend Johnson because the Waldes' claims fall within exclusion A.2(J)(6). We agree.

Exclusion A.2(j)(6) provides the following:

**2. Exclusions**

This insurance does not apply to:

. . . .

**J. Damage to Property**

"Property damage" to:

. . . .

(6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

. . . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

. . . .

"Your work" includes "[w]ork or operations performed by you or on your behalf" as well as "[w]arranties and representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" PCOH includes all "property damage" (1) "occurring away from premises you own or rent" and (2) arising out of "your work" except:

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

The Waldes have alleged property damage not included in the PCOH. Regardless of whether the Permitting Contract was complete when the Waldes in fact lost use of the property, the Policy deems all loss of use unaccompanied by physical injury to have occurred at the time of the occurrence. In this case, the Waldes claim loss of use of the property arising out of Johnson's incorrectly performed obligations to advise them and obtain the necessary approval from the BZA to build the desired barn on the property under the Permitting Contract. The loss of use is deemed to have happened at the time of those incorrect performances. Therefore, the alleged loss of use happened before Johnson's work pursuant to the Permitting Contract was complete.[9]

---

9. If this court were able to consider whether Johnson and the Waldes in fact entered two contracts, we may have been inclined to find that they did not. As a result, Johnson and the Waldes' contract would involve both the agreement to obtain the necessary approval from the BZA and the construction of the barn. In such a case, however, the Waldes'

 Because the Waldes have alleged "property damage" not included in PCOH, the Policy indicates the Waldes' claims would be excluded from coverage under A.2(j)(6) if they claimed "property damage" to "that particular part of property that must be ... replaced because 'your work' was incorrectly performed on it." In this case, A.2(j)(6) precludes coverage. The Waldes have alleged that they lost use of the barn while they were required to tear down and place a new roof on its structure to comply with Aiken's height regulations because of Johnson's defective work. In other words, the Waldes have alleged property damage to that particular part of property that must be replaced because Johnson's permitting work was incorrectly performed on it.

The Waldes contend their claims are not excluded because the defective work occurred before the BZA rather than in the construction of the barn, i.e. they claim Johnson negligently performed the permitting work and did not negligently build the barn. However, this argument that their claims involve a permitting defect and not a construction defect cannot escape the exclusion mandated by A.2(j)(6). *Cf. Century Indem. Co.*, 348 S.C. at 565–67,561 S.E.2d at 358–59 (providing an identical provision excluded coverage not only for (1) "property damage" to defective work caused by that defective work but also (2) "property damage" to non-defective work caused by the defective work), *overruled on other grounds by Crossmann Cmties. of N.C., Inc.*, 395 S.C. at 50, 717 S.E.2d at 594. As a result, the trial court erred in finding AIC had a duty to defend Johnson against the Waldes' allegations.

## CONCLUSION

Because we find AIC had no duty to defend Johnson, we need not address AIC's remaining arguments and issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal). We reverse the trial court's grant of summary judgment to the Waldes. We find the

---

allegations would still allege property damage within the PCOH. Because the Waldes are deemed to have lost use of the barn during Johnson's representation of the Waldes before the BZA, the loss of use would have happened before all of the work in that contract—including the construction—was complete.

Waldes successfully raised the possibility of "property damage" caused by an "occurrence" under the terms of the Policy. However, we hold the Waldes' allegations have not raised the possibility of coverage because they are unambiguously excluded. Thus, we hold AIC had no duty to defend Johnson against the Waldes' claims, and AIC is not liable for the fees and costs sought by the Waldes.

**REVERSED.**

WILLIAMS and LOCKEMY, JJ., concur.