747 S.E.2d 426

**BENNETT & BENNETT CONSTRUCTION, INC., Respondent,**

v.

**AUTO OWNERS INSURANCE COMPANY, Appellant.**

Appellate Case No. 2011–183007.

No. 27284.

Supreme Court of South Carolina.

Heard Oct. 30, 2012.
Decided July 17, 2013.

Rehearing Denied Sept. 6, 2013.

John Lucius McCants, of Rogers Lewis Jackson Mann & Quinn, LLC, of Columbia, for Appellant.

Edwin Russell Jeter Jr., of Jeter & Williams, PA, of Columbia, for Respondent.

Justice PLEICONES.

In this declaratory judgment action we are asked to decide whether the circuit court erred when it found a commercial general liability (CGL) policy provided coverage when a brick face was damaged by improper cleaning after the insured completed its installation. We conclude the policy does not provide coverage.

## FACTS

Bennett & Bennett Construction, Inc. (Bennett & Bennett), a general contractor, was engaged by a homeowner to remove synthetic stucco cladding from her home and replace it with a decorative brick face. Bennett & Bennett hired a subcontractor, M & M Construction of the Carolinas, LLC (M & M), to install the brick. The brick featured a sandy finish, and both Bennett & Bennett and the instructions included with the brick warned M & M not to use pressure washing or acid to clean the brick.

M & M completed installation of the brick face, removed the scaffolding, and left the site. It informed Bennett & Bennett the work was complete and sent a final invoice. Bennett & Bennett inspected the work and discovered mortar and slurry dried onto the face of the brick in a few areas. Bennett & Bennett informed M & M of the problem and directed it to make necessary corrections.

M & M hired a subcontractor to clean the brick. The subcontractor used a pressure washer and acid solution that discolored some of the bricks and removed their decorative finish. After attempts to repair the appearance of the brick face without entirely replacing it proved unsuccessful, Bennett & Bennett instructed M & M to remove and replace all of the brick. M & M ceased all communication with Bennett & Bennett, which then replaced the brick face at its own expense.

Bennett & Bennett filed suit against M & M for breach of contract, breach of warranty, and negligence. Bennett &

Bennett gave notice to both M & M and Auto Owners Insurance Company (Auto Owners), M & M's CGL insurer. Neither M & M nor Auto Owners responded or appeared to defend the suit or at the damages hearing after entry of default against M & M. The circuit court awarded default judgment against M & M.

Bennett & Bennett then brought this action against Auto Owners and M & M seeking a declaratory judgment that M & M's CGL policy from Auto Owners provided coverage for the damages caused by M & M's subcontractor. Following a bench trial, the circuit court found the incident was an occurrence under the policy and that neither exclusion j(5) nor exclusion n applied to remove coverage. It denied Auto Owners' motion to reconsider. This appeal followed.

## ISSUES

I. Did the circuit court err when it ruled exclusion j(5) does not bar coverage under the policy?

II. Did the circuit court err when it ruled exclusion n does not bar coverage under the policy?

## STANDARD OF REVIEW

Insurance policies are subject to the general rules of contract construction. *B.L.G. Enterprises, Inc. v. First Financial Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999). Whether a contract is ambiguous is a question of law, and the interpretation of an unambiguous contract is a question of law. *South Carolina Dept. of Natural Resources v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302–303 (2001). Questions of law are reviewed de novo. *Town of Summerville v. City of North Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

## ANALYSIS

I. Exclusion j(5)

Auto Owners contends the circuit court erred when it held exclusion j(5) did not apply because M & M's work was complete. We agree.

When a contract is unambiguous, it must be construed according to the terms the parties have used. *B.L.G. Enterprises, Inc.*, 334 S.C. at 535, 514 S.E.2d at 330.

In the policy at issue, exclusion j(5) removes from the policy's coverage "property damage" to

> That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations. . . .

The circuit court held exclusion j(5) did not apply to operations that occur after the insured's work has been completed. We disagree. Exclusion j(5) unambiguously excludes coverage whenever the insured or a person acting on the insured's behalf causes damages in the course of working on the property, regardless of whether the insured's work has been completed.

Exclusion j(5) removes coverage when a subcontractor working on the insured's behalf "[is] performing operations, if the 'property damage' arises out of those operations." It is not disputed here that the damage was caused by a subcontractor working on behalf of the insured and that the property damage arose from that work. The only question is whether the subcontractor was "performing operations" for purposes of the policy.

"Operations" is not defined in the policy. When policy language is undefined, courts must give it its plain, ordinary, and popular meaning. *See American Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co.,* 378 S.C. 623, 628, 663 S.E.2d 492, 495 (2008). The *American Heritage Dictionary* defines "operation" as "A process or series of acts performed to effect a certain purpose or result." 2nd College Ed. 1991. Nothing in the context of exclusion j(5) or elsewhere in the policy suggests "operations" should not be given its plain, ordinary, and popular meaning.

The verb phrase "are performing" is in the present continuous tense, indicating that the temporal limits of the exclusion are coterminous with the performance of the acts. There can be no question the damage in this case occurred while the insured's subcontractor was actively "performing operations." *See Action Auto Stores, Inc. v. United Capitol Ins. Co.,* 845 F.Supp. 428, 435 (W.D.Mich.1993) (construing "are performing operations" narrowly in favor of the insured to hold "that the

only damage which is excludable is damage which occurred during the time defendant worked upon the property"); *Fisher v. American Family Mut. Ins. Co.*, 579 N.W.2d 599, 604 (N.D.1998) ("exclusion j(5) excludes coverage only for property damage during the time [the subcontractor] worked upon the property"); *Advantage Homebuilding, LLC v. Maryland Casualty Company*, 470 F.3d 1003, 1011 (10th Cir.2006) ("[T]he better reasoned view is that exclusion j(5) applies *whenever* property damage arises out of the work of the insured, its contractors, or its subcontractors while 'performing operations.'" (internal emphasis and quotation marks omitted; emphasis added)).

The circuit court held that M & M's subcontractor was not "performing operations" when the damage occurred by invoking a time period in the policy that does not affect the applicability of the policy exclusions but only governs which coverage limitation applies. The circuit court correctly determined that "your work" was completed under the policy when the damage occurred but incorrectly concluded that exclusion j(5) therefore did not apply. But the policy language regarding when "your work" is completed is relevant only to the "products completed operations hazard" coverage that applies to damages incurred after "your work" is completed. Products completed operations hazard coverage requires an additional premium, and a separate aggregate limit applies. *See Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 775–76 (5th Cir.2004) (general aggregate limit and products completed operations aggregate limit divided the coverage "into two components, each of which contained its own coverage limitation"). The point at which "your work" is completed as defined under "products completed operations hazard" marks the end of the period when the policy's general aggregate limit applies and the beginning of the period when the products completed operations aggregate limit applies.

M & M purchased both types of coverage. In M & M's policy, both coverages are conferred under the same general grant of coverage and are subject to the same set of exclusions. Thus, the coverage provided to M & M under the general aggregate limit and the products completed operations hazard limit is identical in every way except the time when it applies. The point in time when M & M's general aggregate coverage ended and its products completed operations cover-

age began is immaterial to this case since the insurer is not defending on the basis that the policy's limits have been exhausted.[1]

Other cases cited by the circuit court in support of its finding were inapposite. They dealt with damages that occurred after the contractors' activities on the project had completely ceased, not with damages that occurred during the course of the actions of the insured or his subcontractor, as is the case here. *See Pinkerton & Laws, Inc. v. Royal Insurance Company of America*, 227 F.Supp.2d 1348, 1355 (2002) (concluding exclusion j(5) did not apply when water damage resulted to other property after improper installation of windows); *Lennar Corp. v. Great American Ins. Co.*, 200 S.W.3d 651 (Tex.Ct.App.2006), abrogated on other grounds by *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex.2010) (water damage caused by defective installation of exterior insulation and finish systems); *McMath Const. Co., Inc. v. Dupuy*, 897 So.2d 677 (La.Ct.App.2004) (water damage from leaks caused by defective installation of stucco); *Spears v. Smith*, 117 Ohio App.3d 262, 690 N.E.2d 557 (1996) (sinking, cracking, separating, and other issues caused by inadequate floor support).

Because we conclude that exclusion j(5) unambiguously excludes coverage when the insured's subcontractor damages the work product while performing operations, regardless of whether "your work" is complete under the policy, we hold that exclusion j(5) barred coverage for damages caused by M & M's subcontractor while improperly cleaning the brick face.

## II.   Exclusion n

█ The circuit court also held exclusion n did not exclude coverage under the facts of this case. Although unnecessary

---

1. M & M's policy provides a $1,000,000 aggregate limit for each of these types of coverage. Thus, for example, had a falling brick injured a passerby while the brick was initially being installed and the damages exceeded $1,000,000, coverage would have been exhausted under the general aggregate limit. Despite the exhaustion of that coverage, however, another $1,000,000 in coverage would have been available under the products completed operations aggregate limit had another passerby then been injured while the brick was being removed ("[w]ork that may need service maintenance correction repair or replacement but which is otherwise complete will be treated as completed").

to our analysis, we note that exclusion n also bars coverage under the policy.

The plain language of exclusion n states in relevant part that the policy does not cover

> Damages claimed for any loss, cost or expense . . . incurred . . . for the . . . repair, replacement, adjustment, removal or disposal of . . . "Your work" . . . If such . . . work . . . is withdrawn . . . from use . . . because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

In *Auto Owners v. Newman*, 385 S.C. 187, 684 S.E.2d 541 (2009), this Court held exclusion n barred coverage under a CGL policy for the cost of removing and replacing defectively installed stucco because it was the insured's work. Likewise, in this case, the insured contracted to install a decorative brick face, and the aesthetic characteristics of the brick were an important aspect of the contract. The brick face was replaced because of a deficiency in its aesthetic characteristics. *See also Alverson v. Northwestern Nat. Cas. Co.*, 559 N.W.2d 234, 236 (S.D.1997) (finding that improperly performed cleaning of windows to remove mortar dropped on them by masons became the masonry contractor's work incidental to its contract and finding resulting damage excluded from coverage as "that particular part of any property [the windows] that must be restored, repaired, or replaced because 'your work' [window cleaning] was incorrectly performed on it"). Thus, the insured's work was replaced because of a deficiency or inadequacy in it, and coverage is barred under exclusion n.

## CONCLUSION

■■■■ As we have repeatedly explained, a CGL policy does not insure the insured's work itself but consequential risks that stem from the insured's work. *See Century Indemnity Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 565–66, 561 S.E.2d 355, 358 (2002), overruled in part on other grounds by *Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*, 395 S.C. 40, 717 S.E.2d 589 (2011). CGL coverage "is for tort liability for injury to persons and damage to *other* property and not for contractual liability of [the] insured for economic loss because [the] com-

pleted work is not that for which the damaged person bargained[.]" *Id.* at 566, 561 S.E.2d at 358 *(citing Sapp v. State Farm Fire & Cas. Co.,* 226 Ga.App. 200, 486 S.E.2d 71 (1997)) (emphasis in original). Consistent with this understanding of the type of coverage that is provided by a CGL policy, the plain language of exclusions j(5) and n each independently exclude coverage when, as here, a subcontractor acting on behalf of the insured directly damages the insured's work product, necessitating its removal and replacement.

Because we find coverage unambiguously barred under both exclusion j(5) and exclusion n, we reverse.

TOAL, C.J., concurs.

BEATTY, J., concurring in result only.

HEARN, J., concurring in a separate opinion in which KITTREDGE, J., concurs.

Justice HEARN.

I concur in part. I agree with the majority that exclusion N bars coverage and accordingly, join Section II of the majority's analysis.

KITTREDGE, J., concurs.