763 S.E.2d 598

**PRECISION WALLS, INC., Appellant,**

v.

**LIBERTY MUTUAL FIRE INSURANCE CO., Respondent.**

**Appellate Case No. 2013–000787.**

**No. 5250.**

Court of Appeals of South Carolina.

Heard May 13, 2014.

Decided July 23, 2014.

Rehearing Denied Oct. 23, 2014.

176

Charles H. McDonald, of Robinson, McFadden & Moore, P.C., of Columbia, for Appellant.

Steven W. Ouzts, of Turner, Padget, Graham, & Laney, P.A., of Columbia, for Respondent.

SHORT, J.

In this declaratory judgment action seeking a determination of coverage under an insurance policy, Precision Walls, Inc. (Precision) appeals the trial court's order, which found no coverage and granted judgment in favor of Liberty Mutual Fire Insurance Co. (Liberty Mutual). Precision argues the court erred in: (1) declining to find "property damage" under the policy; (2) declining to find an "occurrence" under the policy; (3) broadly construing one of the policy's exclusions to defeat coverage; and (4) narrowly construing the policy against coverage. We affirm.

## I. FACTS

Precision worked on a building project in Easley, South Carolina, as a subcontractor to the general contractor, SYS Constructors, Inc. (SYS). The contract between SYS and Precision provided the following description of the scope of work:

Scope of work includes all material, labor, equipment[,] and supervision of the following: all light guage (sic) metal framing of walls, roof trusses and decking, building insula-

tion, densglass on exterior, taped & sealed blue board insulation on exterior, [and] installation of door frames.... Exterior insulation to be sealed so as to prevent air infiltration.

The contract also provided the following warranty:

The Subcontractor expressly warrants that all materials, work[,] and equipment incorporated in the Work shall conform to the specifications, drawings, samples[,] and other descriptions set forth in the Subcontract and the Contract Documents and will be of good materials and workmanship and free from defect and warrants that all materials and equipment are both merchantable and fit for the purposes for which they are intended to be used under the Contract Documents.... Upon receipt of written notice from Contractor or Owner of any breach of warranty during the applicable warranty period, Subcontractor shall correct the affected work and all costs incurred as the result of breach of warranty shall be borne by Subcontractor. Should Subcontractor fail to make the necessary correction promptly, Contractor may perform or cause to be performed the necessary work at Subcontractor's expense.

Precision used Seam & Seal tape manufactured by Berry Plastics to tape and seal the joints of the blue board insulation on the building. After Precision installed the insulation, Pride Masonry began constructing a brick veneer exterior wall. Prior to the completion of the brick wall, SYS observed the tape used to seal the joints was losing adhesion and coming loose.

After numerous emails and meetings, on February 12, 2010, SYS directed Precision by letter to comply with its contract to provide sealed joints. SYS required the masonry subcontractor to remove the portion of the brick wall then in place and build a new one once Precision removed the existing tape and sealed the joints with new tape. By change order, SYS deducted $97,500, the cost of tearing down and rebuilding the brick veneer, from Precision's contract.

Precision was covered under a commercial general liability (CGL) policy issued by Liberty Mutual (the Policy). The insuring provision of the Policy provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which this

insurance applies." The Policy defined "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." The Policy applied to " 'property damage' only if ... [t]he ... 'property damage' is caused by an 'occurrence....' " The Policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Finally, the Policy provided an exclusion for "property damage" to "any property that must be restored, repaired[,] or replaced because 'your work' was incorrectly performed on it." The term "your work" was defined in the Policy as follows:

22. "Your Work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts[,] or equipment furnished in connection with such work or operations.

Precision sought coverage under the Policy, which Liberty Mutual denied. Precision filed this declaratory judgment action.

The trial court found the only loss claimed by Precision was the liability it incurred when SYS tore down and reconstructed the otherwise undamaged brick veneer wall for the remedial purpose of bringing Precision's own work into compliance with its contract with SYS. The court found the loss claimed by Precision was not "property damage" as defined by the Policy. The trial court also found the loss resulted from Precision's nonconforming work, and the costs of faulty workmanship and repairing defective work were not an "occurrence" under the Policy. Finally, the court found "[e]ven if the losses ... were found to be within" the Policy, they were excluded under the "your work" exclusion. Thus, the court found the Policy provided no coverage for Precision's claim. This appeal followed.

## II. ISSUES ON APPEAL

1. Did the circuit court err in finding the facts of this case did not establish the existence of "property damage" under the policy?

2. Did the circuit court err in failing to find an "occurrence" under the policy?

3. Did the circuit court err in broadly construing one of the policy's exclusions to defeat coverage?

4. Did the circuit court err in narrowly construing the policy against coverage?

## III. STANDARD OF REVIEW

 "The standard of review in a declaratory action is determined by the underlying issues." *Nationwide Mut. Ins. Co. v. Rhoden*, 398 S.C. 393, 398, 728 S.E.2d 477, 479 (2012). If the dispute is an action to determine whether coverage exists under an insurance policy, the action is one at law. *Id.* In an action at law, tried without a jury, the appellate court will not disturb the trial court's findings of fact unless they are found to be without evidence that reasonably supports those findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## IV. LAW/ANALYSIS

### 1. "Your Work" Exclusion

 Precision argues the trial court erred in finding the "your work" exclusion applied to bar coverage. Assuming without deciding that there was "property damage" caused by an "occurrence," we find the "your work" exclusion barred coverage.

 "The standard CGL policy grants the insured broad liability coverage for property damage and bodily injury which is then narrowed by a number of exclusions." *Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 197, 684 S.E.2d 541, 546 (2009). The exclusions must be independently read and applied. *Id.*

The trial court found "[e]ven if the losses claimed by Precision Walls were found to be within the terms of the insuring agreement, there would be no coverage because the losses are excluded" by the "your work" exclusion. The trial court relied on a "virtually identical" exclusion in *Century Indemnity Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 561 S.E.2d 355 (2002), *overruled on other grounds by Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*, 395 S.C. 40, 45, 717 S.E.2d 589, 591 (2011).

In *Golden Hills*, the United States Fourth Circuit Court of Appeals certified coverage questions to our supreme court. *Id.* at 561, 561 S.E.2d at 356. Homeowners alleged defective stucco caused moisture damage to their properly constructed substrate and framing. *Id.* at 562, 561 S.E.2d at 356. The general contractor was insured under a CGL policy with coverage for "property damage" caused by an "occurrence." *Id.* at 563, 561 S.E.2d at 357. The parties stipulated to "property damage" caused by an "occurrence." *Id.* at 563–64, 561 S.E.2d at 357. However, one of the certified questions in *Golden Hills* considered whether the "your work" exclusion applied. *Id.* at 565, 561 S.E.2d at 358.

Homeowners maintained the exclusion should be interpreted as excluding only repairs to the stucco, which was incorrectly installed, arguing repairs to other property (the substrate and substructure) should not be excluded. *Id.* at 566, 561 S.E.2d at 358–59. The court disagreed, finding the "your work" exclusion applied given the purpose of CGL policies, which is to cover risks of liability but not to insure normal, frequent, or predictable consequences of doing business. *See id.* at 566–67, 561 S.E.2d at 358–59 (providing the "your work" exclusion excluded coverage not only for (1) "property damage" to defective work caused by that defective work but also for (2) "property damage" to non-defective work caused by the defective work).

The "your work" exclusion in *Walde v. Association Insurance Co.*, 401 S.C. 431, 445–46, 737 S.E.2d 631, 638–39 (Ct. App.2012), *petition for cert. filed*, (S.C. Apr. 12, 2013), was also similar to the exclusion in this case. In *Walde*, the property owners, the Waldes, began construction of a barn and paddock for their horses. *Id.* at 435, 737 S.E.2d at 633. The structure included an apartment. *Id.* at 436, 737 S.E.2d at 633. The Waldes' builder assured the Waldes he obtained the proper variance from the Aiken Board of Zoning Appeals (the Board). *Id.* After the builder completed 80% of the building, the building inspector notified the builder that the barn did not comply with the variance requirement and was not a special exception. *Id.* The Board required the Waldes to remove the apartment from the structure. *Id.* at 436, 737 S.E.2d at 634. After the partial demolition of the structure, the Waldes filed claims against the builder. *Id.* at 437, 737 S.E.2d at 634. Association Insurance Company (AIC) insured the builder

under a CGL policy. *Id.* at 438, 737 S.E.2d at 634. This court found that although the Waldes "successfully raised the possibility of 'property damage' caused by an 'occurrence' " under the policy, the exclusion barred coverage for the Waldes' economic losses and loss of use of the barn due to the builder's negligence in the permitting process. *Id.* at 447–48, 737 S.E.2d at 639.

More recently, the supreme court, in a divided opinion, found a "your work" exclusion applied in *Bennett & Bennett Construction, Inc. v. Auto Owners Insurance Co.*, 405 S.C. 1, 747 S.E.2d 426 (2013). In *Bennett*, a homeowner hired a contractor to remove stucco cladding from her home and replace it with decorative brick. 405 S.C. at 3, 747 S.E.2d at 427. The contractor hired a brick installer to install the brick and instructed the subcontractor not to pressure wash or acid wash the brick. *Id.* The brick installer hired a brick cleaner to clean the brick. *Id.* The brick cleaner damaged the brick by using a pressure washer and acid solution. *Id.* After the brick installer refused the general contractor's request to remove and replace the brick, the general contractor replaced the brick at its own expense. *Id.* The general contractor filed an action against the brick installer for breach of contract and obtained a default judgment. *Id.* at 3–4, 747 S.E.2d at 427. The general contractor next sought a declaratory judgment under the brick installer's CGL policy for coverage for the damages. *Id.* at 4, 747 S.E.2d at 427.

Our supreme court first found exclusion j(5) applied, which barred coverage for " 'property damage' to [t]hat particular part of real property on which you or any contractors or subcontractors . . . are performing operations, if the 'property damage' arises out of those operations. . . ." *Id.* at 5, 747 S.E.2d at 428. The supreme court found the damages arose out of the operations performed by the insured or its subcontractor (here, the second subcontractor). *Id.* at 7, 747 S.E.2d at 429. Thus, the court found exclusion j(5) "unambiguously exclude[d] coverage when the insured's subcontractor damages the work product while performing operations, regardless of whether 'your work' is complete under the policy. . . ." *Id.*

"Although unnecessary to [its] analysis[,]" the supreme court also found exclusion n, a "your work" exclusion, applied

to defeat coverage. *Id.* at 7–8, 747 S.E.2d at 429. Exclusion n applied to damages for any loss or expense incurred to repair or replace "your work" if such work was withdrawn from use due to a known or suspected defect. *Id.* at 8, 747 S.E.2d at 429. The court found the brick face was replaced because of a deficiency or inadequacy; thus, coverage was barred under exclusion n. *Id.* at 8, 747 S.E.2d at 430. The court concluded, "As we have repeatedly explained, a CGL policy does not insure the insured's work itself but consequential risks that stem from the insured's work." *Id.*

We find the "your work" exclusion applies in this case. The exclusion applies to property that must be restored, repaired, or replaced. The exclusion specifically includes materials furnished in connection with such work. Here, the contract between SYS and Precision required Precision to "correct the affected work and all costs incurred as the result of [a] breach of warranty...." We find the defective tape, and all costs associated with its replacement, fall squarely within the exclusion.

## 2. Construction of the Policy

Precision also argues the trial court erred in narrowly construing the policy to defeat coverage. We disagree.

 "An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." *Auto Owners Ins. Co. v. Rollison,* 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008) (citation omitted). The court must give policy language its plain, ordinary, and popular meaning. *Pres. Capital Consultants, LLC v. First Am. Title Ins. Co.,* 406 S.C. 309, 316, 751 S.E.2d 256, 259 (2013). The court must construe ambiguous terms in an insurance policy liberally in favor of the insured and strictly against the insurer. *Stringer v. State Farm Mut. Auto. Ins. Co.,* 386 S.C. 188, 192, 687 S.E.2d 58, 60 (Ct.App.2009). "[I]n cases where there is no ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense." *Id.* (quoting *Garrett v. Pilot Life Ins. Co.,* 241 S.C. 299, 304, 128 S.E.2d 171, 174 (1962)). "The court cannot torture the meaning of policy language to extend coverage not

intended by the parties." *S.C. Farm Bureau Mut. Ins. Co. v. Dawsey,* 371 S.C. 353, 356, 638 S.E.2d 103, 105 (Ct.App.2006) (citing *State Farm Fire & Cas. Co. v. Barrett,* 340 S.C. 1, 8, 530 S.E.2d 132, 135 (Ct.App.2000)).

We find there was no ambiguity in the policy terms at issue; thus, the trial court was not required to construe the terms in favor of Precision. Rather, the trial court appropriately construed the relevant policy terms according to their plain and ordinary meaning. We find no error in the trial court's construction of the policy.

### 3. Remaining Issues

Based on our disposition of Precision's challenges to the "your work" exclusion and the trial court's construction of the policy, we need not address Precision's remaining challenges to the trial court's findings regarding "property damage" and "occurrence." *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of another issue is dispositive of the appeal).

## V. CONCLUSION

For the foregoing reasons, the order on appeal is
**AFFIRMED.**

FEW, C.J., and GEATHERS, J., concur.