20225

Joyce S. YARBOROUGH, Respondent, v. PHOENIX MUTUAL LIFE INSURANCE COMPANY, Appellant

(225 S. E. (2d) 344)

Forrest C. Wilkerson, Esq., of *Roddy, Sumwalt & Carpenter,* Rock Hill, *for Appellant,*

*Messrs. B. D. Hayes* and *John C. Hayes,* of *Hayes, Brunson and Gatlin,* Rock Hill, *for Respondent,*

June 1, 1976.

LITTLEJOHN, Justice:

This action was commenced to recover benefits allegedly due under a group life and major medical expense benefit contract of insurance. The lower court, ruling without a jury, after a reference, granted a judgment representing hospitalization and other medical expenses in favor of the plaintiff. The defendant, insurer, has appealed. We reverse.

The plaintiff is the manager, in Rock Hill, of one of Raylass' Department Stores. Raylass became a participant in a group policy offered by Phoenix, the insurer, in November of 1971. The master policy of insurance is voluminous and is held by Raylass at the home office in New York, as trustee for the employees covered by the single policy. The brief of counsel indicates that thousands of employees are insured. Each insured person, including the plaintiff herein, received a certificate of insurance sometime in December 1971, evidencing acceptance of the insurance and setting forth not all, but the more important portions of the group policy. The certificate itself specifies that it is not a contract and that it is merely a statement of the insurance provided under the policy. Although the certificate held by the respective employees specifies that it is not a part of the con-

tract, it quotes, *verbatim,* the relevant portions with which we are concerned in this action.

There was appended to the certificate of the plaintiff (and apparently to that of each of the other insured persons), an information sheet, referred to as a sticker, partly typed and partly printed, setting forth the name of the insured employee and relative information. The sticker sheet reads as follows, the typewritten portions being indicated in italics:

Employer Member: *Raylass Dept. Stores Inc.*
Name of Employee: *J. S. Yarborough*
Effective Date: *Nov. 15, 1971*
Account Number: *M55-0189*
Trustees of the Retail
Industry Group Insurance Fund

INSURANCE SCHEDULE

Life Insurance—$5,000.00
Accidental Death and
Dismemberment Insurance—$5,000.00

MAJOR MEDICAL EXPENSE BENEFITS

| *Maximum Benefit* | *Deductible Amount* | *Private Room Limit* | *Percentage of Covered Expenses Payable* |
|---|---|---|---|
| $50,000.00 | $100.00 | Most common Semi-private | 80% of the first $2,000.00 in a |
| GCS-1 | | Rate + $4.00 | c a l e n d a r year over the deductible amount and 100% of the balance |

Medicare Major Medical Expense Benefit - Medicare Person

| *Maximum Benefit* | *Private Room Limit* |
|---|---|
| $10,000.00 | Most common semi-private room rate plus $4.00 |

· Not more than one Deductible amount shall be deducted from the total Covered Expenses incurred during any one Calendar Year by the employee, the employee's spouse and their dependent children, as the result of Injuris sustained in one common accident.

This individual Certificate is not a contract. It is merely a statement of the insurance provided under the group policy. The Group Policy constitutes the only contract, and all rights which may exist arise from and are governed by the group policy. Provisions of the group policy principally affecting the insurance of the employee are shown word for word on the following pages of this Certificate as they appear in the policy.

The policy, as well as the certificate, contained the following provision:

Phoenix Mutual will pay the Coinsured Percentage of the amount by which Covered Expenses incurred on behalf of a Covered Person during any Calendar Year exceed the Deductible Amount, subject to the Maximum Benefit, and all other provisions of this policy.

DEDUCTIBLE AMOUNT: Before any benefits are payable hereunder, the amount to be deducted from the Covered Expenses incurred on behalf of each Covered Person during each Calendar Year shall be the Basic Benefits plus a Cash Deductible of $100.00, provided that in no event shall the total Cash Deductible to be applied during any Calendar Year to the total Covered Expenses incurred by all Covered Persons in any one family during said Calendar Year exceed $250.00. The term "family" as used herein shall include only the employee and his dependents, as defined herein.

BASIC BENEFITS whenever used herein shall mean the greater of (a) and (b):

(a) The following charges incurred during the Calendar Year with respect to the Covered Person: charges made by a Hospital during the first 21 days of hospital confinement,

plus the first $300.00 of surgical charges for each surgical procedure plus the first $100.00 of charges made by a Physician for professional services other than surgical procedures for any one confinement.

(b) The benefits payable (either in the form of cash payments or of services supplied) with respect to expenses incurred by the Covered Person during the Calendar Year under any Blue Cross or Blue Shield plan or plans (by whatever name called) if the Employer Member or any other employer contributes toward the cost of such plan or makes payroll deduction therefor.

The plaintiff went to the hospital, while the policy was in effect, and incurred medical and hospital expenses during 1972 in the amount of $3,177.85. It is her contention that the insurer should pay $2,877.85 under the terms of the policy. It is the contention of the insurer that the amount due is $30.92.

In the lower court it was determined by the special referee, and confirmed by the judge, that no representations relevant to the issues in this case were made to the plaintiff. No issue of estoppel or waiver is involved. Accordingly, the lower court looked, as must this Court, to the four corners of the instruments, including the verbiage of the policy, certificate and sticker, and the arrangement of the same, for a construction of the policy and for a determination of the obligation of the insurer.

The plaintiff did not read the policy, which was retained in the home office of Raylass. She testified that she did not read the certificate until after the medical expenses were incurred, but did look at the sticker on the front and "that's what I went by."

The lower court ruled that the language contained upon the sticker, in typewriting, attached to the certificate, as it relates to deductible features of the policy, and the language

contained in the interior of the certificate (same as in policy) in printed form, created an ambiguity. It resolved the ambiguity in favor of the plaintiff and granted judgment in the full amount prayed for in the complaint.

The question we are called upon to determine in this appeal may be fairly stated as follows:

Did the trial judge err in holding that the language on the sticker, as relates to the deductible features of the contract, are irreconcilable with the provisions elsewhere in the contract as quoted hereinabove?
Stated another way:

Is there an ambiguity in the policy which must be resolved in favor of the plaintiff?

As indicated by the sticker, quoted hereinabove, the policy afforded the plaintiff life insurance in the amount of $5,000.00, plus accidental death and dismemberment insurance in the amount of $5,000.00, as well as major medical expense benefits in the maximum amount of $50,000.00. Premium paid by the plaintiff was in the amount of $7.42 per month; Raylass paid a supplemental amount not indicated in the record before this Court.

The relationship of the certificate, including the sticker, to the policy must be determined by the intent of the parties as gleaned from the instruments themselves.

"It is generally held that an employee's contract of insurance under the group plan consists of the policy issued by the insurer to the employer, the individual certificate delivered by the employer to the employee being no part of such contract, but only an instrument reciting the employee's right to protectiton under the terms of the group policy so long as there is a compliance with the conditions of the policy. To a like effect, the 'parent' or master policy issued to the employer, and not the certificate issued to the employee, is the policy of insurance contemplated by a statute

providing that every policy of insurance shall contain the entire contract, and that no statement or statements not endorsed upon or attached to the policy when issued shall be used in defense of a claim under the policy unless contained in a 'written application.' It has also been held that where a statute regarding group insurance provides that the policy, the application of the employer, and the individual applications, if any, of the employees insured, shall constitute the entire contract between the parties, a contention that the individual certificate issued to the employee pursuant to another section of the statute contained the entire insurance contract cannot be sustained.

"For the purposes of construction, however, the master policy and the certificate are to be considered together as parts of the same contract." 44 Am. Jur. (2d) *Insurance* § 1870.

We are of the opinion that the lower court erred in treating the sticker and the certificate as though it were a rider or a part of the policy itself. Section 37-146 of the Code of Laws of South Carolina (1962) requires that each policy of insurance must contain the whole contract which shall consist of the policy itself and a copy of the application. Both the sticker and the certificate distinctly state (1) that the certificate is not a contract, (2) that the group policy constitutes the only contract, and (3) that rights which may exist arise from and are governed by the group policy. This Court cannot say that the sticker was in actuality a part of, or an amendment to the policy. The parties had the right to agree upon the conditions of the policy, and this Court has no right to change the agreement. It is appropriate, however, to consider both the sticker and the certificate in construing a policy, but only if an ambiguity exists within the policy itself. 13A Appleman *Insurance Law and Practice* § 7528 at 97 (1976).

There is no contention that there is an ambiguity within the policy itself. It is consistent with the certificate. The

finding of the ambiguity is bottomed upon the erroneous conclusion that the sticker is a part of the insurance policy contract. Inasmuch as it is not argued that there is an ambiguity within the policy itself, the sticker and the certificate may not be used to create an ambiguity.

As indicated hereinabove, there is no contention that misrepresentations have been made to the insured, and there is no contention that the insurer has waived any rights or should be estopped to insist upon the provisions of the master policy.*

Even if the sticker, upon which the insured would ■ rely to the exclusion of other provisions in the contract, should be considered a part of the contract, we are of the opinion that there is no ambiguity which must be decided in favor of the insured under our previous holdings to the effect that an ambiguity should be construed against the insurer. The insured would single out the words "Deductible Amount $100.00" on the sticker, and disregard all other pertinent provisions. It is well settled that in construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity. Presumably, all portions of a contract are inserted for a purpose and the contract must be read as a whole, giving appropriate weight to all provisions. When this is done, it becomes clear that there is no ambiguity.

As a rule of construction, the Court must consider the entire contract between the parties to determine the meaning of its provisions. That construction will be adopted which will give effect to the whole instrument and to each of its various parts and provisions, if it is reasonable to do so. 43 Am. Jur. (2d) *Insurance* § 263 (1969). In 13 Appleman *Insurance Law and Practice* § 7383 at 43-45

---

* The complaint merely alleges the issuance of the policy and refusal of the insurer to pay. The master found, and the judge confirmed: "That any representations made to the plaintiff are irrelevant to the issues in this case."

(1976), it is stated that the meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract.

It is common knowledge that a major medical expense insurance policy is designed to take care of major, as contrasted with minor, hospitalization and medical expenses. The policy involved does just that. In reaching this conclusion, we have kept in mind a most important rule governing the construction of a contract. That rule is that the court should carry out the intent of the parties.

The insured, in effect, says to the court, "I looked at the sticker and saw that it said 'deductible amount $100.00' and assumed that all medical and hospital bills whatsoever, except $100.00 and except 20% of the first $2,000.00, were covered by the policy." Such an assumption is not warranted. The words, "deductible amount $100.00," upon which the plaintiff would rely for the creation of an ambiguity, conveys no meaning until the coverage provided by the whole policy is ascertained. In other words, there is nothing to deduct the $100.00 amount from until the coverage provided is determined. Many types of insurance policies, such as fire, collision, and health, provide $100.00 or other deductible amounts. The $100.00 must, of course, be deducted from the coverage provided. To attach meaning to "deductible amount $100.00," without considering the coverage provided, is somewhat like asking the question, "What is the answer if one subtracts 10?" There is, of course, no answer until one learns what 10 is to be subtracted from. In like fashion, $100.00 deductible in a medical expense policy has no meaning until the coverage is ascertained. Such must be ascertained from a consideration of the entire policy.

We have given consideration to the fact that the language relied upon, on the sticker, was typewritten, whereas other

portions of the sticker and the certificate were printed. We reach the conclusion that the significance attributed by the lower court to this fact is not warranted.

Let the case be remanded for entry of judgment in keeping with the contentions of the defendant in its answer.

Reversed and remanded.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.