805 S.E.2d 204

**The STATE, Respondent,**

**v.**

**Lance Leon MILES, Appellant.**

**Appellate Case No. 2015-000308**
**Opinion No. 5511**

Court of Appeals of South Carolina.

Heard June 7, 2017
Filed August 23, 2017
Rehearing Denied October 19, 2017

Appellate Defender John Harrison Strom, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General Megan Harrigan Jameson, Assistant Deputy Attorney General David A. Spencer, all of Columbia; and Solicitor Samuel R. Hubbard, III, of Lexington, for Respondent.

HILL, J.:

Lance L. Miles appeals his conviction for trafficking in illegal drugs in violation of section 44-53-370(e)(3) of the South Carolina Code (Supp. 2016). He argues the trial court erred by: (1) instructing the jury, in reply to a question they posed during deliberation, that the State did not have to prove Miles knew the drugs were oxycodone; (2) denying his directed verdict motion; and (3) admitting three statements he contends were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We affirm.

## I.

While scanning parcels for illegal drugs at the Federal Express office in West Columbia, agents from the Lexington County Sheriff's Office became suspicious of a package. They arranged for a controlled delivery to the listed address, which was within an apartment complex. Surveilling the delivery, they observed the delivery person ring the doorbell and leave the package by the front door. A few moments later, an agent noticed Miles exit a nearby apartment and begin walking around the parking lot. The agent then saw a young female emerge from the delivery address. She looked at the box, got on her phone, quickly hung up and went back inside. Miles then got on his phone while walking towards the box. Miles picked up the box and started back to his apartment. Seeing the agents advancing to intercept him, he tried to ditch the box. The agents apprehended and handcuffed him.

Agent Edmonson immediately questioned Miles about the contents of the box. Miles claimed he did not know what was inside. Edmonson then asked if there were drugs inside the box; Miles responded there probably were, but he did not know what kind. At this point, Edmonson read Miles his *Miranda* rights and asked Miles again whether there were drugs in the box. Miles again responded the box could contain

drugs, but he did not know what kind. Upon obtaining a search warrant and Miles' consent, the agents opened the box and discovered three hundred pills that a chemist later testified contained a total of nine grams of oxycodone. Edmonson next asked Miles to write down everything he knew about the box and the drugs. Edmonson then reread Miles his *Miranda* rights, and Miles wrote a statement admitting he had been paid one hundred dollars to pick up the box, someone named "Mark" had called him to pick it up, and the "owner" was a "Stacks" from Tennessee.

Edmonson then wrote out two questions. First, "Did you know drugs are in the parcel 'box'?" Miles wrote, "Yes." The second question and answer—related to Miles' admission that he had previously picked up packages for money—were redacted and not presented to the jury.

Miles was indicted for trafficking in illegal drugs, in violation of section 44-53-370(e)(3). He did not testify at his trial and moved unsuccessfully for directed verdict, arguing in part there was insufficient evidence he knew the box contained oxycodone. During the jury charge, the trial court gave the following instruction:

> Mr. Miles is charged with trafficking in illegal drugs and in this case we are referring to [o]xycodone. The State must prove beyond a reasonable doubt that the Defendant knowingly delivered, purchased, brought into this state, provided financial assistance or otherwise aided, abetted, attempted or conspired to sell, deliver, purchase, or bring into this state and was knowingly in actual or constructive possession or knowingly attempted to become in actual or constructive pos[session] of the [o]xycodone. Possession may be either . . . actual or constructive.

The trial court charged that the State bore the burden of proving the amount of oxycodone was more than four grams. The trial court further instructed that the State had to prove criminal intent, which required a "conscious wrongdoing," and that intent may be inferred from the conduct of the parties and other circumstances. After deliberating for some time, the jury asked the following question: "Does the [S]tate have to prove that the defendant knowingly brought into the state

four grams or more of [o]xycodone or just any amount of illegal drugs in order to consider this trafficking?"

The trial court, over Miles' objection, replied to the jury as follows:

> [T]he law in South Carolina is the State does not have to prove that the Defendant knew that the drugs in the package were [o]xycodone, just that he knew that the package contained illegal drugs. However, the State does have to prove beyond a reasonable doubt that the illegal drugs that were in the package w[ere] more than four grams of [o]xycodone.

The jury later returned with a verdict of guilty. Because Miles had at least two prior drug convictions, he was sentenced to the mandatory minimum term of twenty-five years, and ordered to pay a $100,000 fine.

## II.

 Miles' primary argument on appeal is the trial court's supplemental charge misinformed the jury that the State did not need to prove beyond a reasonable doubt that Miles knew the drug he possessed was oxycodone. We review jury instructions to determine whether they, as a whole, adequately communicate the law in light of the issues and evidence presented at trial. *State v. Logan*, 405 S.C. 83, 90, 747 S.E.2d 444, 448 (2013).

Section 44-53-370(e)(3) provides in part:

> Any person who *knowingly* sells, manufactures, cultivates, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, cultivate, deliver, purchase, or bring into this State, or who is *knowingly* in actual or constructive possession or who *knowingly* attempts to become in actual or constructive possession of: ... four grams or more of any morphine, opium, salt, isomer, or salt of an isomer thereof, including heroin, as described in Section 44-53-190 or 44-53-210, or four grams or more of any mixture containing any of these substances, is guilty of a felony which is known as "trafficking in illegal drugs"....

(emphases added).

Miles contends the term "knowingly" as used in subsection (e) applies to each element of the trafficking offense, including

the specific type of drugs listed in (e)(3). The issue of whether trafficking requires proof that the defendant not only knowingly intended to "sell[ ], manufacture[ ], cultivate[ ] ..." or "posses[ ]" illegal drugs, but also had knowledge of the precise identity of the illegal drug being trafficked, has, surprisingly, never been addressed by our appellate courts.

■ We are mindful that "statutory interpretation begins (and often ends) with the text of the statute in question. Absent an ambiguity, there is nothing for a court to construe, that is, a court should not look beyond the statutory text to discern its meaning." *Smith v. Tiffany*, 419 S.C. 548, 555–56, 799 S.E.2d 479, 483 (2017) (citations omitted).

Courts grapple often with that tricky adverb "knowingly." In *United States v. Jones*, 471 F.3d 535, 538 (4th Cir. 2006), the court construed a federal statute that punished "[a] person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce ... with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." (quoting 18 U.S.C. § 2423(a) (2000 & Supp. 2003)). Rejecting the argument that the government was required to prove the defendant knew the person transported was a minor, Judge Wilkinson noted:

> [C]onstruction of the statute demonstrates that it does not require proof of the defendant's knowledge of the victim's minority. It is clear from the grammatical structure of § 2423(a) that the adverb "knowingly" modifies the verb "transports." Adverbs generally modify verbs, and the thought that they would typically modify the infinite hereafters of statutory sentences would cause grammarians to recoil. We see nothing on the face of this statute to suggest that the modifying force of "knowingly" extends beyond the verb to other components of the offense.

*Id.* at 539.

The United States Supreme Court has not been so gun-shy about the adverb.[1] They ordinarily read a "statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *Flores-Figueroa v. Unit-*

---

[1]. We suspect the bar for causing grammarians to recoil is low.

*ed States*, 556 U.S. 646, 652, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009). They have also found "the word 'knowingly' applies not just to the statute's verbs but also to the object of those verbs." *McFadden v. United States*, —— U.S. ——, 135 S.Ct. 2298, 2304, 192 L.Ed.2d 260 (2015).

But the Court has not gone so far as to hold that a criminal statute that opens with "knowingly" invariably requires each element be proven by that level of intent. It is commonplace that "different elements of the same offense can require different mental states." *Staples v. United States*, 511 U.S. 600, 609, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). Even in *Flores-Figueroa*, the Court acknowledged that "knowingly" does not always modify every element, particularly where the statutory sentences at issue "involve special contexts or ... background circumstances that call for such a reading." 556 U.S. at 652, 129 S.Ct. 1886. The Court emphasized that "the inquiry into a sentence's meaning is a contextual one." *Id.*; *see also Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986) ("Fundamental to any task of interpretation is the principle that text must yield to context.") (Friendly, J.).

■■■ Our duty is to determine legislative intent, and the text of the statute is often the best evidence of that intent. *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). Yet the text "must be construed in context and in light of the intended purpose of the statute in a manner which harmonizes with its subject matter and accords with its general purpose." *Cabiness v. Town of James Island*, 393 S.C. 176, 192, 712 S.E.2d 416, 425 (2011) (citation and internal quotations omitted).

■■■ We find that by using "knowingly" in subsection (e), the Legislature did not intend to require the State to prove a defendant knew the specific type of illegal drug he was trafficking. Section 44-53-370 is concerned with criminalizing numerous forms of conduct involving illegal drugs. Thus, subsection (c) decrees "[i]t shall be unlawful for any person knowingly or intentionally to possess a controlled substance," subject to certain exceptions not relevant here. S.C. Code Ann. § 44-53-370(c) (Supp. 2016). Our supreme court has held the language now codified in subsection (c) requires the State to prove beyond a reasonable doubt that the defendant knew he

possessed a "controlled substance." *State v. Attardo*, 263 S.C. 546, 549, 211 S.E.2d 868, 869 (1975). Subsection (d) then sets forth the penalties for possession based on the type of controlled substance. S.C. Code Ann. § 44-53-370(d) (Supp. 2016).

This brings us to trafficking, subsection (e). Tellingly, our supreme court has explained "[i]t is the amount of [the controlled substance], rather than the criminal act, which triggers the trafficking statute, and distinguishes trafficking from distribution and simple possession." *State v. Raffaldt*, 318 S.C. 110, 117, 456 S.E.2d 390, 394 (1995). While the court in *Raffaldt* was not confronted with the mental state required for a trafficking conviction, that issue was addressed in *State v. Taylor*, 323 S.C. 162, 166, 473 S.E.2d 817, 819 (Ct. App. 1996). In *Taylor*, the defendant was charged with trafficking more than ten grams of crank, in violation of section 44-53-375(C) of the South Carolina Code (Supp. 1995), which contains language nearly identical to section 44-53-370(e), including placement of the adverb "knowingly." Taylor argued the language required the trial court to charge the jury that "they could not find [her] guilty of trafficking in crank unless she knew there were ten grams or more." *Taylor*, 323 S.C. at 167, 473 S.E.2d at 819. Relying on *Raffaldt*, we disagreed. *Id.*

*Raffaldt* and *Taylor* illuminate the "special context" revealed by viewing section 44-53-370 as a whole. Because section 44-53-370(c) only requires knowledge that the substance is "controlled," and because *Raffaldt* and *Taylor* tell us the only difference between the elements of distribution and simple possession and the elements of trafficking is the amount of the controlled substance involved, there is no reason to suspect the Legislature meant to require knowledge of the specific type of controlled substance in trafficking prosecutions. Miles' interpretation depends upon isolating "knowingly" in subsection (e) and extending its modifying reach not only to "possession," but to the specific type of drugs listed. Magnifying individual words of a statute and insisting they be interpreted concretely can lead to strange results. One could, for example, myopically diagram subsection (e)(3) and conclude it criminalizes the possession of more than four grams of table salt, or even the conduct of the delivery person in this case. Further, were we to adopt Miles' version of subsection (e), the State would have to convince the jury

beyond a reasonable doubt the defendant not only knew the drugs were oxycodone, but also knew that oxycodone is a "morphine, opium, salt, isomer, or salt of an isomer thereof, including heroin, as described in Section 44-53-190 or 44-53-210, or . . . any mixture containing any of these substances." We doubt the Legislature, in passing the drug trafficking laws, meant to create a scenario where a defendant is culpable only if armed with a proficiency in chemistry on par with a pharmacist or Walter White.[2] That is why considering the words in their surrounding environment is essential, especially here where the statute runs to nearly five-thousand words and represents the Legislature's will in the massive field of drug interdiction. Given this background, "[i]f ever we are justified in reading a statute, not narrowly as through a keyhole, but in the broad light of the evils it aimed at and the good it hoped for, it is here." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 557, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (Jackson, J., dissenting).[3]

■ When a statute can be read in its ordinary sense, courts have no right to engineer an extraordinary one. That the Legislature titled the offense defined by subsection (e)(3) as "trafficking in illegal drugs" affirms our conclusion that a defendant need not know the precise identity of the controlled substance to be guilty. *See Univ. of S.C. v. Elliott*, 248 S.C. 218, 221, 149 S.E.2d 433, 434 (1966) ("[I]t is proper to consider the title or caption of an act in aid of construction to show the intent of the legislature."). This sense becomes inescapable when we consider subsection (e)(3)'s reference to sections 44-53-190 and 44-53-210 of the South Carolina Code (Supp. 2016), which set forth Schedules I and II governing classification of controlled substances. While we can interpret statutes by bringing in rules of grammar, logic, and other tools, we must be careful not to construe common sense out.

Courts in many other states share our conclusion that proving the defendant knew the specific type of drug is not required in trafficking and other controlled substance of-

---

2. *Breaking Bad* (AMC 2008–13).

3. Our emphasis on context and structure bears on the threshold decision of whether the statute is ambiguous, and is not meant to dilute the rule of lenity, as we later discuss.

fenses. *See, e.g., State v. Stefani,* 142 Idaho 698, 132 P.3d 455, 461 (Idaho Ct. App. 2005); *People v. Bolden,* 62 Ill.App.3d 1009, 20 Ill.Dec. 79, 379 N.E.2d 912, 915 (1978); *Com. v. Rodriguez,* 415 Mass. 447, 614 N.E.2d 649, 653 (1993); *State v. Ali,* 775 N.W.2d 914, 919 (Minn. Ct. App. 2009); *State v. Edwards,* 257 N.J.Super. 1, 607 A.2d 1312, 1313 (App.Div. 1992); *State v. Engen,* 164 Or.App. 591, 993 P.2d 161, 170 (1999); *State v. Sartin,* 200 Wis.2d 47, 546 N.W.2d 449, 455 (1996).

 We cannot leave this issue without discussing the important canon of statutory construction that penal statutes are to be strictly construed. This rule of lenity applies when a criminal statute is ambiguous, and requires any doubt about a statute's scope be resolved in the defendant's favor. *Berry v. State,* 381 S.C. 630, 633, 675 S.E.2d 425, 426 (2009). But the rule of lenity is not a device to create ambiguity, nor should a court invoke it before considering the words of the statute in context. *State v. Dawkins,* 352 S.C. 162, 166–67, 573 S.E.2d 783, 785 (2002); *State v. Firemen's Ins. Co. of Newark, N.J.,* 164 S.C. 313, 162 S.E. 334, 338 (1931) ("The rule that a penal statute must be strictly construed does not prevent the courts from calling to their aid all the other rules of construction and giving each its appropriate scope, and is not violated by giving the words of the statute a reasonable meaning according to the sense in which they were intended, and disregarding ... even the demands of exact grammatical propriety." (citation and internal quotations omitted)); *see also United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (court should rely on lenity only if, "[a]fter 'seiz[ing] every thing from which aid can be derived,'" it is "left with an ambiguous statute" (quoting *United States v. Fisher,* 6 U.S. (2 Cranch) 358, 386, 2 L.Ed. 304 (1805) (Marshall, C.J.))).

 One of the foundations of the rule of lenity is the concept of fair notice—the idea that those trying to walk the straight and narrow are entitled to know where the line is drawn between innocent conduct and illegality. *McBoyle v. United States,* 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931) ("[I]t is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.

To make the warning fair, so far as possible the line should be clear."). The line for conduct involving contraband is not merely clear but fluorescent. At least since *State v. Freeland,* 106 S.C. 220, 91 S.E. 3 (1916), we have required a defendant to know or be willfully ignorant that he was dealing with contraband drugs to satisfy criminal intent. This removes innocent activity, inadvertence or accident from the law's grasp. At any rate, we need not apply the rule of lenity here, as context has convinced us section 44-53-370(e)(3) does not require proof of knowledge of the specific identity of the controlled substance. *Carter v. United States,* 530 U.S. 255, 269, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (courts are required "to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct' ").

Another foundation of the rule of lenity is the separation of powers. Our Constitution commits the task of defining criminal offenses solely to the Legislative Branch. *Bass,* 404 U.S. at 347-48, 92 S.Ct. 515; *United States v. Wiltberger,* 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820). If the Legislature believes our interpretation expands or is otherwise contrary to the scope it intended section 44-53-370(e)(3) and its harsh penalty scheme to have, it can amend the statute.

The trial judge's instructions—including his initial charge that criminal intent consists of "conscious wrongdoing"—conveyed the pertinent legal standards to the jury. He further correctly charged that the State still bore the burden of proving the drug quantity and identity.

## III.

Miles next argues he was entitled to a directed verdict because the State presented insufficient evidence that he knowingly trafficked oxycodone. As we have held, the State needed only to prove Miles knew the item was a controlled substance. Because there was evidence Miles possessed the box, the jury was free to infer he knew what was in it. As the assistant solicitor pointed out, the evidence was literally lying at Miles' feet. *See State v. Gore,* 318 S.C. 157, 163, 456 S.E.2d 419, 422 (Ct. App. 1995) ("Possession gives rise to an inference of the possessor's knowledge of the character of the substance."). Of course, Miles also admitted he knew the box

contained drugs. Viewing the evidence in the light most favorable to the State, these circumstances go far beyond mere suspicion. There was ample direct and substantial circumstantial evidence from which Miles' guilt could be fairly and logically deduced. Rule 19, SCRCrimP; *State v. Odems,* 395 S.C. 582, 586, 720 S.E.2d 48, 50 (2011).

## IV.

Miles contends the series of three statements he gave to law enforcement should have been suppressed because the agents engaged in the "question-first" manipulation of *Miranda* forbidden by *Missouri v. Seibert,* 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), and *State v. Navy,* 386 S.C. 294, 688 S.E.2d 838 (2010). He asserts Agent Edmonson's immediate questioning of him upon arrest was a custodial interrogation triggering *Miranda.* At trial, the State conceded as much and agreed not to present evidence of Miles' first two statements. But, during a later bench conference, Miles agreed to their admissibility, which is unsurprising as this strategy allowed Miles to get his theory of the case—that he didn't know what kind of drugs were in the package—before the jury without having to take the stand. *See State v. Bryant,* 372 S.C. 305, 642 S.E.2d 582 (2007) (stating an issue conceded at trial cannot be argued on appeal).

The issue of whether admission of Miles' third, written statement violated *Seibert* and *Navy* is unpreserved. Miles did not raise these cases or the "question-first" principle to the trial court. *See State v. Byers,* 392 S.C. 438, 446, 710 S.E.2d 55, 59 (2011) ("For an admissibility error to be preserved, the objection must include a specific ground 'if the specific ground was not apparent from the context.'" (quoting Rule 103(a)(1), SCRE)); *In re Michael H.,* 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004) ("In order to preserve an issue for appeal, it must be raised to and ruled upon by the trial court. In other words, the trial court must be given an opportunity to resolve the issue before it is presented to the appellate court." (citation omitted)).

Even if the issue was preserved, any error in admitting the redacted written statement was harmless. The statement was cumulative and could not have reasonably

contributed to the verdict. It did not contradict Miles' earlier statements that he did not know the type of drugs in the box, and added he was paid one-hundred dollars to retrieve it. *See State v. Martucci*, 380 S.C. 232, 261, 669 S.E.2d 598, 614 (Ct. App. 2008) ("The admission of improper evidence is harmless where the evidence is merely cumulative to other evidence."). We cannot imagine the vague references to others involved packed any punch with the jury.

## V.

The trial court did not err in its supplemental instruction to the jury that the State was only required to prove Miles knowingly trafficked in a controlled substance. There was sufficient evidence to carry the case to the jury, and even if the *Miranda* issue was preserved, we find no prejudice. Miles' conviction is therefore

**AFFIRMED.**

GEATHERS and MCDONALD, JJ., concur.