**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Betty Herrington, Respondent,

v.

SSC Seneca Operating Company, LLC, d/b/a Seneca
Health & Rehabilitation Center; SavaSeniorCare, LLC;
SSC Equity Holdings, LLC; SavaSeniorCare
Administrative Services, LLC; SavaSeniorCare
Consulting Services, LLC; Defendants,

Of which SSC Seneca Operating Company, LLC, d/b/a
Seneca Health & Rehabilitation Center; SavaSeniorCare
Administrative Services, LLC; SavaSeniorCare
Consulting Services, LLC; are the Appellants.

Appellate Case No. 2018-002088

_____

Appeal From Oconee County
R. Scott Sprouse, Circuit Court Judge

_____

Opinion No. 5866
Submitted May 3, 2021 – Filed October 6, 2021

_____

**REVERSED AND REMANDED**

_____

Stephen L. Brown, D. Jay Davis, Jr., and Russell G.
Hines, all of Clement Rivers, LLP, of Charleston, for
Appellants.

Raymond T. Wooten, of Smith Jordan, P.A., of Easley,
for Respondent.

_____

**HEWITT, J.:**   The appellants in this case are a number of related organizations operating a nationwide chain of senior care facilities.  We will refer to them as "the Sava Group."  They appeal a circuit court order declining to compel arbitration and argue the stated basis for avoiding arbitration—that the parties only agreed to arbitrate disputes involving precisely $50,000—is erroneous.  We agree and reverse.

## FACTS

Betty Herrington injured her foot and went to the hospital.  She was admitted to one of the Sava Group's facilities later for further care.  After about a month, Herrington was transferred back to the hospital for the foot to be amputated.  In this lawsuit, she claims the amputation was the result of malpractice and neglect she experienced at the Sava Group's facility.

One of the many documents Herrington signed when she was admitted to the Sava Group's facility was a "Dispute Resolution Program," sometimes referred to as a "DRP."  The opening paragraphs state:

> The purpose of DRP is to enhance the quality of care that is provided to our residents, and to resolve any disagreements about care and other services that we provide and that may arise.

> DRP is valuable to all parties because it offers a streamlined process to settle disagreements.  DRP increases the likelihood that disagreements can be resolved more quickly and less expensively than by litigation and that residents themselves will actually benefit from faster resolution of disagreements.  Participation in DRP also helps to reduce the cost of healthcare for everyone.

After the introduction, the agreement provides (in bold, underlined, and uppercase type) that "[b]y agreeing to have all disagreements resolved through the dispute resolution program, the parties agree to waive the right to a judge or a jury trial and to have the dispute resolved through various steps, culminating in a decision by an arbitrator."

The centerpiece of this case is the agreement's definition of "dispute."  The agreement says a "dispute" is "any claim . . . totaling $50,000 individually or in the

aggregate . . . ." The definition specifies that the agreement does not cover smaller claims; it says "any such claim or dispute involving solely a monetary claim in an amount less than $50,000" shall "not be deemed a dispute under this agreement."

At the end—right before the signature block—the agreement provides (in bold and uppercase type) that:

> by agreeing to have all disagreements resolved through the dispute resolution program, the parties agree to waive the rights to a judge or a jury trial. The Arbitrator's decision is final and binding, and cannot be appealed to any state, or federal court, unless provided for [in] state or federal law.

The Sava Group moved to compel arbitration based on the agreement. The circuit court conducted a hearing and took the case under advisement before entering a written order finding:

> The [agreement] applies to disputes and defines a dispute as "any claim or dispute totaling *$50,000 individually or in the aggregate* that would constitute a cause of action that either party could bring in a court of law[.]" (*emphasis added*). Claims for less than $50,000 are excluded from the definition of a dispute. Therefore, by its own unambiguous terms, the [agreement] only applies to claims or disputes of exactly $50,000.

The circuit court did not address Herrington's other arguments questioning whether the agreement was a valid binding contract. The Sava Group's motions to reconsider, alter, or amend were denied.

**ISSUE**

Whether the circuit court erred in interpreting the arbitration agreement as only applying to claims for exactly $50,000.

**STANDARD OF REVIEW**

"The question of arbitrability of a claim is an issue for judicial determination unless the parties provide otherwise." *Partain v. Upstate Auto. Grp.*, 386 S.C. 488, 491, 689 S.E.2d 602, 603 (2010). Our standard of review is de novo. *Id.* Still, "a circuit

court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings." *Id*.

## LAW/ANALYSIS

This case presents the odd but familiar situation where opposing parties pitch different interpretations of a writing while also arguing the writing is unambiguous. The Sava Group argues the agreement as a whole is capable of only one reasonable interpretation—that the parties agreed to arbitrate any claim or dispute totaling $50,000 *or more*. Herrington maintains the circuit court was correct in finding the agreement only requires arbitration for claims of exactly $50,000 pursuant to the plain and literal language in the agreement's definition of "dispute."

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Aiken v. World Fin. Corp. of S.C.*, 373 S.C. 144, 149, 644 S.E.2d 705, 708 (2007). "A motion to compel arbitration made pursuant to an arbitration clause in a written contract should only be denied where the clause is not susceptible to any interpretation which would cover the asserted dispute." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 597, 553 S.E.2d 110, 118–19 (2001).

The circuit court rejected the Sava Group's argument that the parties intended the arbitration clause to apply to all claims for $50,000 or more by reasoning the court would have to add language to the agreement in order to read the agreement this way. The court went on to cite *Ellis v. Taylor*, 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994), for the rule that "[w]hen the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." The court explained its duty was to enforce the contract (not to rewrite it), the agreement was drafted by "sophisticated entities," and the agreement did not require arbitration because Herrington was not claiming "exactly $50,000 in damages."

This ruling makes sense if one isolates his or her focus to the literal reading of the agreement's "dispute" definition. Even so, and critically, we are convinced that interpretation does not hold up when viewing the agreement as a whole. We are bound to interpret the agreement by looking at the entire agreement from beginning to end: precedent explains that when construing a contract, "all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976). We do this because "[p]resumably, all portions of a contract are inserted for a purpose and the contract must be read as a whole, giving

appropriate weight to all provisions." *Id.* We assume the parties intended a meaningful agreement, not a nonsensical or absurd one, so we read agreements in a way that "will give effect to the whole instrument and to each of its various parts and provisions, if it is reasonable to do so." *Id.* at 593, 225 S.E.2d at 349.

The agreement begins by stating the parties' desire to "have all disagreements resolved through the dispute resolution program." In similar fashion, the agreement closes with a reference to the parties "agreeing to have all disagreements resolved through the dispute resolution program." The obvious intention is that most disputes will go through arbitration—claims of lesser value are defined to not even be "disputes"—and one cannot come away from the agreement without the idea that the parties intended for the agreement to comprehensively describe how they would handle all of their disputes and disagreements. Yet, Herrington argues, and the circuit court found, that the parties only agreed on how they would handle two classes of claims: claims worth less than $50,000 and claims for exactly $50,000.

We cannot agree. That interpretation results in an idiosyncratic agreement that does not remotely accomplish its stated purpose. Putting aside the practical question of how one would enforce a contract binding someone to arbitrate claims with precisely $50,000 in controversy—could a plaintiff simply plead damages of one cent more or less and completely avoid arbitration?—the agreement's purpose was directly advertised as covering all disagreements, not discussing some and ignoring others. We are convinced the right approach is to read the agreement as comprehensive. We do not think it is sensible to read it as an agreement that is all donut-hole and no donut.

We acknowledge *Ellis*, which states:

> When the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect. The court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully.

316 S.C. at 248, 449 S.E.2d at 488 (citation omitted). Still, we have recognized that one cannot interpret text without also considering context. *See State v. Miles*, 421 S.C. 154, 161, 805 S.E.2d 204, 208 (Ct. App. 2017) (quoting *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986)). And sometimes "[t]here is no surer way to misread any document than to read it literally." *Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir. 1944) (Hand, J., concurring). We respect Herrington's

argument that it is not for this court to question why the Sava Group would create a dispute resolution regime that exempts more than it covers. But in the end, we cannot adopt a construction that pits the agreement against itself and results in a dispute resolution scheme that is essentially void of any practical effect. *See Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 407 S.C. 407, 416–20, 756 S.E.2d 148, 152–54 (2014) (instructing that courts should assume the parties intended to form a binding contract and an interpretation saving the contract will be favored over another that voids it or renders terms superfluous).

**CONCLUSION**

We reverse the circuit court's order and remand for the circuit court to consider Herrington's remaining arguments opposing arbitration.

**REVERSED AND REMANDED.**[1]

**LOCKEMY, C.J., and HUFF, J., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.